ALBERENE STONE COMPANY, Plaintiff, *v.* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, December 18, 1934.

*Charles Howard Levitt,* for the plaintiff and defendants Murray & Sorensen, Inc., and another.

*Francis Dean,* for Edward V. McGovern Corporation.

*Paul Windels, Corporation Counsel,* for the Board of Education of the City of New York and another.

*Benjamin C. DeWitt,* for the defendant Grinnell Company.

*Eugene V. King,* for the defendant Elkay Manufacturing Company.

*Nichols & Snevily,* for the defendant Cornell & Underhill, Inc.

COTILLO, J. On June 12, 1931, the defendant Edward V. McGovern Corporation made a contract with the defendant board of education of the city of New York for certain plumbing work at Brooklyn Technical High School. On July 28, 1933, a payment of $26,614 was due McGovern under the contract and had been approved by the board of education. This money could not be paid to McGovern because on that date the defendant Grinnell Company filed a lien in the sum of $10,441.26 for materials furnished to McGovern and used in the construction of the high school. McGovern, pursuant to section 21, subdivision 6, of the Lien Law, obtained an order from this court directing that the money due McGovern be paid to it less $11,300 to cover the amount of Grinnell's lien together with costs, expenses and interest. Pursuant to this order the comptroller of the city of New York paid $15,314 to McGovern and set aside the balance. At the time of the making of the order and the payment of the money to McGovern the only lien filed was the lien of Grinnell. Thereafter liens in the amount of $18,359.70 were filed as follows: September 16, 1933, Pacific Foundry Company, $1,695.50; September 25, 1933, Alberene Stone Company, $5,367; Eastern Bronze and Wire Company, $101.90; January 12, 1934, Croker Fire Prevention Company, $2,366.25; January 15, 1934, Robert A. Keasbey Company, $1,306.18; January 22, 1934, Spencer Turbine Company, $484; January 22, 1934, Cornell & Underhill, Inc., $77.49; January 23, 1934, Claremont Steel and Ornamental Works, Inc., $90; January 23, 1934, Becker Valve and Specialty Company, $900.20; February 6, 1934, Loomis Manning Filter Distributing Company, $242.50. After the filing of the lien on September 16, 1933, by the Pacific Foundry Company other moneys became due McGovern in the sum of $6,375.50. Neither the amount nor the validity of Grinnell's lien is disputed. The defendant Grinnell in this application moves for an order for summary judgment in its favor asking for a foreclosure of its lien and the payment thereof out of the fund of $11,300 set aside and

withheld by the comptroller. The only question before the court is whether the money set aside by the comptroller under the order of this court which was obtained pursuant to section 21, subdivision 6, of the Lien Law shall be paid to Grinnell or shall be shared *pro rata* by Grinnell and all subsequent lienors. This section, which became effective on October 1, 1930, is as follows: " Where a contractor has to his credit with the state or with a municipal corporation, a sum of money by reason of an estimate due and payable to him, and where payment of such estimate is withheld because a notice of lien has been filed against his interest in said money, and where said money is in excess of the amount claimed in the notice of lien, the contractor may apply without notice to the supreme court of this state or to any justice thereof or to the county judge of any county, for an order directing the comptroller of the state or the financial officer or person with whom the lien is filed, to retain from such estimate a sum of money, which shall not be less than the amount claimed by the lienor, with interest thereon for one year and such additional amount as the justice deems sufficient to cover all costs and expenses and to immediately pay over the balance of such estimate to the contractor. The amount so retained shall be held by the comptroller or such financial officer or other officer or person until the lien is discharged as otherwise provided in this section."

On first reading this statute, one might readily assume that it had been the intention of the Legislature to create a preference in favor of the lienor, whose claim was specifically covered by an amount segregated by the Comptroller of this State. Reading the statute, however, in the light of other provisions of the Lien Law, it becomes apparent that such was not the intention. Section 25, passed in 1929, provides: " Persons having liens under contracts for public improvements shall have no priority by reason of the time of filing their respective liens, but all liens of the same class shall be on a parity, and in all cases laborers for daily or weekly wages shall have preference over all other lienors having liens arising under the same contracts pursuant to this article."

In 1930 section 25 was amended, among other things, to provide as follows: " (4) There shall be no priority among labor lienors, as a class or among other lienors as a class, and any moneys available for distribution among lienors of any class shall be distributed *pro rata* in accordance with their respective valid liens."

The intent of the Legislature in passing the sections now under review may be best decided by reading the report of the Joint Legislative Committee to investigate the Lien Law. That report contains the following comment on the proposed amendment to

section 25: "The purpose of this section is to clarify the law as to the respective rights of lienors and assignees, over which there is at present considerable confusion. The present law provides that there shall be no priority as between different liens filed by material-men. However, in the case where a lien is filed and the assignment is thereafter recorded and subsequently other liens are filed for material, necessarily the first lienor who has priority over the assignment is in a different situation than lienors who are subsequent to the assignment, and one purpose of the amendment is to clarify the section so as to definitely state the rights of the respective parties under those circumstances." (Leg. Doc. 1930, No. 72, p. 23.)

Briefly, section 25 was amended in other respects, namely, it gave a preference to an assignment of moneys filed before the filing of a lien or an assignment. To make definite and certain the intent of the Legislature that the lienors would, nevertheless, be entitled to share *pro rata*, the priority provision of the 1929 law was restated in a separate subdivision and emphasized by the committee.

With the enactment of the parity provisions, the Legislature enacted parallel therewith the provisions declaring all funds received by an owner, contractor or subcontractor, on account of an improvement, as trust funds to be used toward the payment of the cost of the improvement, namely, cost of material and labor going into the improvement. These provisions are now known as trust provisions in our Lien Law. In 1930 section 36-a was incorporated in our Lien Law, effective October 1, 1930.

" § 36-a. Contractor who diverts funds guilty of larceny. The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law." (Inserted by Laws of 1930, chap. 859, § 18, in effect Oct. 1, 1930.)

In 1932, in order to avoid a possible misconstruction, section 25-a was enacted.

" § 25-a. Contractor on public improvements who diverts funds guilty of larceny. The funds received by a contractor for a public

improvement are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law."

It is an elementary canon of statutory construction that all portions or parts of an act must be considered together and that even though a statute be divided into many sections, each section must be construed in the light of the other sections and each section is to be kept subservient to the general intent of the whole enactment.

As was stated in *Ansonia B. & C. Co.* v. *New Lamp-Chimney Co.* (53 N. Y. 123, at p. 125): " This twenty-first section may not stand alone. It is to be read and applied in connection with every other section of the act. All must have their due and conjoint effect. Each must be so far qualified and limited by each other as that all may have operation in harmony, if so it may be. And each must be kept in subservience to the general intent of the whole enactment."

In *People ex rel. Mason* v. *McClave* (99 N. Y. 83) the court says (at p. 89): " The primary purpose of interpretation is to ascertain the intent of the law-makers, and in statutes as other instruments, clauses, in themselves absolute and unqualified may be limited by other clauses and provisions. The whole context of a statute may be examined to ascertain the meaning of a particular clause, and this becomes necessary where the meaning is doubtful, or where by giving a particular clause full effect it would come in conflict with other clauses. A statute, like a will or contract, is to be construed as a whole, and in applying this principle of construction, it is not material in which order provisions, which at first blush seem contradictory, are placed. The meaning is to be collected *ex antecedentibus et consequentibus,* and a later provision may be qualified by a prior one, or the contrary."

Counsel for Grinnell argues that only subdivision 6 of section 21 should be taken into consideration. However, the courts of this State have time and again ruled that a particular provision of an act is not to receive a special meaning at variance with the general purpose and spirit of the entire act. (*People* v. *Long Island R. R. Co.,* 194 N. Y. 130.)

There can be no doubt of the legislative intention to avoid preferences in liens of the same class and to make it unnecessary for materialmen to race with each other for priority in time in filing their liens.

It is almost unnecessary to say that since a mechanic's lien is entirely a creation of statute, the Legislature can withdraw the priorities which materialmen used to enjoy under the Lien Law as it stood before amendment and can decree equality in the division of whatever money there is among liens of equal rank. The statute, it will be noted, directs the Comptroller to hold the money until the lien is discharged, as otherwise provided in section 21. The various subdivisions of section 21 set up different conditions which result in the discharging of the lien. For example, under subdivision 4 the contractor may deposit a sum of money not less than the amount claimed by the lienor under a court order with the Comptroller. Under subdivision 5 there are provisions for the giving of sureties. Concerning the effect of the giving of a bond to discharge a lien, it was held in *Progressive Clay Co.* v. *Village of Rockville Centre* (N. Y. L. J. Feb. 13, 1932) by the Hon. RUSSELL BENEDICT, sitting as an official referee, that under the statute, as amended, liens are to be paid ratably without regard to priority of filing, and that the only effect of an undertaking is to substitute the obligation of the surety for the money due or to become due on the contract to the contractor from the State or municipality, and then to discharge the amount due or to become due from the lien.

Arguing by analogy, if the existence of a bond is not the creation in effect of a preferential claim in favor of the diligent lienor, by analogous reasoning the existence of a fund withheld by the Comptroller is not entitled to be reserved for the exclusive payment of the more diligent lienor. Accordingly, I hold that the motion of the defendant Grinnell for summary judgment must be denied.