INTERNATIONAL HARVESTER COMPANY OF AMERICA, INC., Appellant, Respondent, *v.* JAMES P. WHELAN and Others, Respondents, Impleaded with THE PEOPLE OF THE STATE OF NEW YORK and Others, Respondents, Appellants.

Third Department, March 20, 1936.

*Alfred D. Dennison*, for the plaintiff-appellant-respondent, and for all defendants-respondents, except those appealing.

*John J. Bennett, Jr., Attorney-General [Isaac I. Marks, Assistant Attorney-General*, of counsel], for the defendant-respondent-appellant, The People of the State of New York.

*Cravath, deGersdorff, Swaine & Wood [Joseph Day Lee* of counsel], for the defendant-respondent-appellant, Kalman Steel Corporation.

*Aaron & Dautch [George M. Simon* of counsel], for the defendant-respondent-appellant, Keystone Portland Cement Co.

*John J. Glavin*, for the defendants-respondents-appellants, Tony Greco and Daniel S. Bader, Jr.

*Ainsworth & Sullivan [Nelson R. Pirnie* of counsel], for the defendants-respondents, Official Purchase Corporation and Ter Bush & Powell, Inc.

Twenty-eight attorneys for other defendants.

HILL, P. J. This action is brought to foreclose liens upon the amount due a contractor from the State for the construction of a public improvement. The defendant Whelan, in August, 1931, contracted with the State (Contract Nos. RC2193 and CH8400) to construct a highway and to reconstruct other highways. In October, 1932, he defaulted, his contract was canceled and a contract to complete the work let to Harp & Conway Construction Co. Under the contract with Whelan he was to receive $202,313.63, The State paid $57,706.76 to the new contractors. Prior to the commencement of this action, Whelan had received $94,514.04 and the State had paid in addition $1,322.74 for keeping the road passable for traffic after Whelan's default. Harp & Conway on the reletting bid lower unit prices than the State had agreed to pay Whelan. It is asserted by the State that the saving, $4,953.63, should accrue to the benefit of the State. It was determined in

the court below that the lienors and assignees were entitled to $48,770.09 in accordance with Whelan's contract. By this decision they, rather than the State, had the benefit of the saving.

The State is given two options if it be determined that the work is not being done in accordance with the contract, which provides: (1) The " Commissioner of Highways may suspend or stop the work under the contract * * * [and] complete the work in such manner as will accord to the contract plans and specifications and be for the best interests of the State, or (2) he may cancel the contract and re-advertise and re-let." Agreeably with the foregoing, the contractor in the next paragraph agrees " that the State reserves the right (1) to suspend or (2) cancel this contract as above provided and (1) to complete the work thereunder or (2) re-advertise and re-let as the Commissioner may determine." The Commissioner of Highways, under the foregoing provisions which I have designated (1), was permitted to terminate Whelan's employment and to proceed to complete the work. Had this happened, the State would have been obligated to pay the amount of the Whelan contract less the cost of completion. The alternative, which I have designated (2), permitted the State to stand on its strict legal rights and to cancel and terminate the contract in which event Whelan would be entitled to the amount earned thereon prior to the cancellation, but nothing thereafter. (*Fraenkel* v. *Friedmann,* 199 N. Y. 351.) There is no allegation in plaintiff's complaint as to whether there was a cancellation or only a suspension of the work by the Commissioner. The answer of the State pleads that the contract was canceled and it is not questioned that a completion contract was let. This allegation in the State's pleading is sustained by the uncontroverted proof, as is the fact that there was a saving of $4,953.63 under the new contract. The lienors and assignees stand in the same position as Whelan. He would be entitled to recover only $43,816.46 against the State were there no liens or assignments; and that amount the lienors and assignees are entitled to recover, but no more. The amount of the saving which has been included in the recovery against the State should be deducted therefrom.

On August 16, 1932, and during the progress of the work by the contractor Whelan, he obtained a court order under subdivision 6 of section 21 of the Lien Law, which authorized the Comptroller to pay over the balance of certain estimates that remained after deducting $4,200 which was to be retained on account of five liens which had then been filed. It was determined that the money withheld would pay the five liens with interest thereon for one year and provide an additional amount sufficient to cover costs and

expenses attendant upon the collection of the liens. This fund is still held by the State and is a part of the unpaid balance. Two of the five lienors, Kalman Steel Corporation and Keystone Portland Cement Co., appeal from that portion of the judgment which determines that they are general lienors and only entitled to share *pro rata* with other lienors in the same class. They argue that under subdivision 6 their liens should be paid from the $4,200, and that they are entitled to that entire amount to satisfy their liens. (The other three lienors are not interested in this issue for reasons not important to this discussion.) Such a determination would permit them a preference over other lienors of the same class. They cite *Arrow Iron Works, Inc.,* v. *Greene* (260 N. Y. 330). Subdivision 4 of section 21 was under consideration in that case. This subdivision permits a contractor with an estimate due him but withheld because a lien has been filed, to procure an order from the court directing the payment of the estimate, upon his depositing with the Comptroller a sum of money to be fixed by the court, and which shall be not " less than the amount claimed by the lienor, with interest thereon for * * * one year * * * and such additional amount as the justice deems sufficient to cover all costs and expenses." The distinction between subdivisions 4 and 6 is more substantial than a superficial consideration would indicate. Under subdivision 4, money not connected with the contract is deposited, and the entire amount of the estimate is paid to the contractor. This he receives in trust " to be applied first to the payment of claims of subcontractors,. architects, engineers, surveyors, laborers and material men arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement." (Lien Law, § 25-a.) Failure so to apply the money is declared to be larceny. Thus the non-contract money deposited may be applied to the payment of the liens already filed and for which it was deposited as security, without injury to other and later lienors and assignees, they being entitled only to a lien upon the amount earned and payable under the contract. Under subdivision 6 new or non-contract money is not deposited, but a portion of the earnings under the contract is withheld. To construe subdivision 6 as subdivision 4 was construed in the *Arrow Iron* case would permit the lienors who first filed a preference and priority as to money earned under the contract over those later filed. This would be in contravention of subdivision 4 of section 25 of the Lien Law. " There shall be no priority among labor lienors as a class or among other lienors as a class, and any moneys available for distribution among lienors of any class shall be distributed

*pro rata* in accordance with their respective valid liens." The *Arrow Iron* case does not announce a principle which may be applied in connection with subdivision 6 of section 21.

Questions are raised on this appeal as to the validity of certain assignments or liens, the sufficiency of notices of lien, as to the amount adjudged payable to one of the lienors and as to allowances to attorneys. These matters require no discussion other than a reference to Judge VAN KIRK's findings and opinion. The judgment should be affirmed in these particulars thereon.

It was conceded upon the argument that through error in computation $200.50 was adjudged to be paid lienors in excess of the amount owing by the State. This error should be corrected. The sum, $4,953.63, earlier discussed should be deducted from the sum payable to general lienors and assignees.

The judgment should be modified as indicated in this opinion and as so modified affirmed, with costs of this appeal payable out of the fund to the attorneys filing briefs.

HEFFERNAN, J., concurs; BLISS, J., concurs in the opinion by HILL, P. J., and in his own separate memorandum in which HILL, P. J., and HEFFERNAN, J., concur; RHODES, J., concurs in that portion of the opinion and decision determining that the saving belongs to the State and correspondingly reduces the amount payable by the State to lienors, but dissents from that portion of the opinion and decision which determines that Kalman Steel Corporation and Keystone Portland Cement Co. have no special lien upon the $4,200 set apart under the order of the Special Term; such dissent being upon the ground that said Kalman Steel Corporation and Keystone Portland Cement Co. have a special and exclusive lien on said $4,200 retained and set apart, to the extent of their said liens; McNAMEE, J., dissents from that portion of the decision which holds that the amount by which the original contract cost was reduced on the reletting belongs to the State, and is not subject to the rights of the lienors, on the ground that all unpaid lienors and materialmen have an interest in the original contract and in what was done and what was earned thereunder, as well as in the cost of completion in case of reletting. It was not the intention of this statute or of the contract that the State should profit by the default of the original contractor at the expense of lienors who furnished the labor and materials on the faith of that contract and the statute which are intended for their protection. Neither the statute nor the contract looks forward to their loss, unless the cost of completion is in excess of the cost fixed by the original contract. And also dissents from that part of the decision which holds that

the fund of $4,200 in the hands of the State Comptroller, set apart by the order of the court pursuant to section 21, subdivision 6, of the Lien Law, to meet the liens of Kalman Steel Corporation and Keystone Portland Cement Co. is not primarily subject to their liens, on the ground that the fund, in so far as necessary to meet the amount of those two liens, is a special and earmarked fund for the payment of those two liens, before any other liens may be paid therefrom.

Bliss, J. (concurring). I concur in the decision for the reasons set forth in the opinion of our presiding justice and for this added reason: That the moneys retained under subdivision 6 of section 21 of the Lien Law differ from those deposited under subdivision 4 of the same section is borne out by this further fact. Should the lienors, because of whose liens these moneys were retained, not establish claims to the full amount of those retained moneys, the balance would be available for distribution among lienors whose liens had been filed later. Moneys deposited under subdivision 4 would not be thus available, and the later lienors could not share in any surplus of these deposited moneys. This example clearly demonstrates the essential difference in character between the deposited moneys and the retained moneys. One class was not earned under the contract while the other class was. If later lienors might share in the surplus of the retained moneys, then under the express terms of section 25 that there shall be no preference among lienors of the same class, all lienors should share equally in all moneys earned and unpaid under the contract, including the retained moneys.

It is only by this construction of the statute that full force and effect can be given to all of its provisions.

Hill, P. J., and Heffernan, J., concur.

Judgment modified as indicated in the opinion of Hill, P. J., and as modified affirmed, with costs of this appeal payable out of the fund to the attorneys filing briefs.

New findings of fact and modifications of findings of fact are made as to amounts due the several lienors to reflect the change in the aggregate figures as stated in the opinion; and the findings of fact as to the amount owing by the State is changed and modified to reflect the statements contained in the opinion.

Order and findings are to be settled before Hill, P. J., on ten days' notice.