BETHLEHEM FABRICATORS, INC., Respondent, *v.* WILLS, TAYLOR & MAFERA CORPORATION, Defendant, Impleaded with THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

Second Department, July 2, 1936.

*Isaac I. Marks, Assistant Attorney-General* [*John J. Bennett, Jr.,* *Attorney-General,* with him on the brief], for the appellant.

*Arthur Miller* [*Edwin S. Whit* with him on the brief], for the respondent.

HAGARTY, J.   On the 15th day of June, 1933, the non-appealing defendant, Wills, Taylor & Mafera Corporation, hereinafter called the contractor, entered into a construction contract with the State.   The plaintiff furnished labor and materials for the fabrication and erection of the structural steel work required and, on the 1st day of October, 1934, filed its lien in the sum of $16,615.   The following day the contractor discharged this and two other liens upon application pursuant to subdivision 6 of section 21 of the Lien Law, with the result that the Comptroller of the State retained the sum of $26,000 as the amount claimed by the lienors, plus interest, costs and expenses.   There is no confusion here because of the merged interests of the two alien lienors, as they have stipulated to waive all rights to become parties to this action.   The contention of the People is that other and subsequent lienors should be made parties to this action.   Although the appellant states in its brief that prior as well as subsequent liens were filed, all prior liens were discharged or secured by separate funds at the time the contractor made his application in this instance and, of course, it

was essential to the granting of the application that moneys commensurate with the amount of all liens then outstanding be retained.

Section 21 of the Lien Law provides eight different methods by which a lien against the amount due a contractor for the construction of a public improvement may be discharged. Three of them deal with the creation of a special fund or security, namely, under the fourth subdivision of section 21, by deposit of a sufficient sum of money; under the fifth, by the filing of an undertaking, and, under the sixth, that invoked here, by an order directing the Comptroller to retain sufficient moneys, viz.: "6. Where a contractor has to his credit with the State or with a municipal corporation, a sum of money by reason of an estimate due and payable to him, and where payment of such estimate is withheld because a notice of lien has been filed against his interest in said money, and where said money is in excess of the amount claimed in the notice of lien, the contractor may apply without notice to the Supreme Court of this State or to any justice thereof or to the county judge of any county, for an order directing the Comptroller of the State or the financial officer or person with whom the lien is filed, to retain from such estimate a sum of money, which shall not be less than the amount claimed by the lienor, with interest thereon for one year and such additional amount as the justice deems sufficient to cover all costs and expenses and to immediately pay over the balance of such estimate to the contractor. The amount so retained shall be held by the Comptroller or such financial officer or other officer or person until the lien is discharged as otherwise provided in this section. The application for the order may be made upon a verified petition or upon other written proofs showing a proper case therefor."

We are of opinion that the sum of money retained pursuant to this subdivision is earmarked for the discharge of the affected lien and constitutes the sole fund to which the lienor may look for payment and to which he has a primary right, to the exclusion of other and subsequent lienors. We deem it the equivalent of the fund created pursuant to subdivision 4 of the same section of the Lien Law. In *Arrow Iron Works, Inc.*, v. *Greene* (260 N. Y. 330) the contractor had proceeded under subdivision 4 of section 21 of the Lien Law by placing on deposit a sum sufficient to cover the outstanding lien and, by so doing, released and obtained a sum of money otherwise due him. It was subsequently adjudged that costs and disbursements and an extra allowance brought the sum due the lienor to a greater amount than the deposit, and the lienor sought the excess from other funds of the contractor, which funds other lienors also claimed. The Court of Appeals held that the lienor could look only to the specific fund. Judge KELLOGG writes

(pp. 337, 338): " The purpose of the provision is to free the moneys remaining payable from the claim of the lienor, so that thereafter the State may safely make payments to the contractor or other lienors, as it may be advised. This result would not be achieved if, after the making of the deposit, the lienor might recover from the general fund the costs and disbursements of a foreclosure action which the deposit was not sufficient to satisfy. The reason that the present plaintiff must suffer rests in the fact that the order of, discharge provided for an insufficient deposit, and from that order the plaintiff took no appeal. We think that the plaintiff may have no other relief than the payment to it of the sum deposited; that neither the ' earned ' nor ' unearned ' items, due upon the contract, are subject to any claim by the plaintiff."

If this be so, then the converse must also be true, and the other lienors, necessarily subsequent in time, who have recourse to the general funds of the contractor, may not also share proportionately in the only fund available to the lienor whose lien created the specific fund. It will be observed that the creation of this fund, working the discharge of the lien as to the balance of the moneys, is accomplished at the instance of and for the benefit of the contractor and is a right which may be exercised by him irrespective of the attitude of the lienor.

In support of its contention that the specific fund is available not only to the lienor whose lien caused its creation but to all other lienors, the appellant relies upon subdivision 4 of section 25, reading: " (4) There shall be no priority among labor lienors, as a class or among other lienors as a class, and any moneys available for distribution among lienors of any class shall be distributed *pro rata* in accordance with their respective valid liens."

This subdivision is undoubtedly intended to create equality of distribution among lienors irrespective of the time of the filing of the lien, but we are of opinion that its application is of necessity limited to the funds of the contractor that are available for general distribution purposes, and that it is without application to funds that have been earmarked for payment of a specific lien or liens in accordance with section 21. The appellant, however, cites authorities in the First and Third Departments to the contrary and in support of its contention, with which we are constrained to disagree.

In *International Harvester Co.* v. *Whelan* (247 App. Div. 215) the contractor, as here, procured, under subdivision 6 of section 21 of the Lien Law, a court order authorizing the Comptroller to pay over the balance of certain estimates that remained after deduction of moneys to cover outstanding liens, which deducted sum was to be retained until their discharge. The Third Department holds

that the lienors whose liens were covered by this fund may share therein only proportionately with other lienors. The *Arrow Iron Works, Inc., Case (supra)* is distinguished on the ground that the deposit under subdivision 4 of section 21 is of new money and that when the contractor thus gets all of the money due him and unaffected by the lien, this entire sum is nevertheless impressed with a trust created by virtue of section 25-a of the Lien Law to the effect that funds received by a contractor for a public improvement are trust funds to be applied to the payment of claims of subcontractors, etc., and other necessary expenses incident to the work before they may be utilized for any other purpose. The effect of this holding is that the contractor is in reality contributing additional funds of his own for the purpose of paying liens. We do not agree with this distinction and, in any event, section 25-a does not impose upon a contractor the obligation to distribute to subcontractors proportionately the sums received by him irrespective of whether or not liens have been filed. To impose such an obligation would mean that all moneys received under a State contract would have to be held until the termination of the work, when the respective amounts due subcontractors could be ascertained. A contractor is free to pay claims of subcontractors. He might, by agreement with the lienor and simultaneous discharge of the lien, take the money due him and pay the entire amount of the lien therefrom. Instead of doing that, he procured an order directing the Comptroller to retain such a sum and the Comptroller now holds it as security for the payment of such lien or as a fund out of which such lien may be satisfied.

We are of opinion that such a fund is a special one earmarked for the purposes of payment of the specific lien for which the moneys have been retained. In other words, the Lien Law contemplates two separate funds, one, by section 21, for the creation of special funds to take care specifically of liens of record, and, two, the balance or general funds of the contractor received from the job to take care of subcontractors and others whose liens have not been filed and of subsequent liens. If that is not the purpose, and the subdivision is to be construed as creating a fund in which all subsequent lienors may share, then the subdivision is meaningless and worthless, as all funds, whether in the contractor's hands or the Comptroller's, are deemed to be held in trust under section 25-a of the Lien Law.

For the same reasons, we are unable to agree with the holding in *Alberene Stone Co.* v. *Bd. of Education, City of N. Y.* (153 Misc. 812; affd. without opinion, 244 App. Div. 711). There, it would seem that all funds created under section 21, inclusive of deposits

and undertakings, are held to be available to all subsequent lienors under the parity provision contained in section 25 of the Lien Law.

The judgment should be affirmed in so far as an appeal is taken therefrom, with ten dollars costs and disbursements.

LAZANSKY, P. J., DAVIS and TAYLOR, JJ., concur; ADEL, J., dissents and votes to reverse. The construction placed upon subdivision 6 of section 21 of the Lien Law by the majority opinion, while it may not work an injustice in this case, sanctions preferential treatment in favor of one party to the injury of lienors of the same class; a situation which the law seeks to avoid. If funds earned by the general contractor may be " earmarked " for the benefit of a particular lienor, then the purpose of the Lien Law, which directs that available funds shall be distributed *pro rata*, is destroyed.

Judgment, in so far as an appeal is taken therefrom, affirmed, with ten dollars costs and disbursements.