HARRY BACK, Plaintiff, *v.* THE BOWERY SAVINGS BANK, Defendant.

Municipal Court of New York, Borough of Manhattan, First District,
March 9, 1937.

*Philip D. Greiff,* for the plaintiff.

*Cadwalader, Wickersham & Taft,* for the defendant.

LEWIS (DAVID C.), J.  The defendant, a savings bank, moves under subdivision 1 of section 250 of the Banking Law to amend the proceedings by making one Fanny Back a party defendant and for such other and further relief as may be just and proper.

The plaintiff demands a denial of the motion upon the ground that the defendant has failed to comply with subdivision 5 of section 250 of the Banking Law.

The facts out of which the lawsuit arises are: On January 9, 1937, there was on deposit with the defendant The Bowery Savings Bank the sum of $658.53, standing in the plaintiff's name in the account numbered 1,657,341.  On that day Fanny Back, through her attorney, Irving Levine, served a notice on the bank claiming title to said funds and instructing the bank to permit no withdrawals by the depositor, the plaintiff Harry Back.  On January twenty-third the said Fanny Back further communicated with the bank through her attorney with reference to an alleged report

by the bank that Mr. Back represented that the bank book had been lost, the attorney stating that the bank book had been exhibited to him by Mr. Back. There was a typographical error in the communication of the twenty-third, in that it stated " *Mr*. Back " instead of " *Mrs*. Back," and on January 25, 1937, the attorney corrected such mistake, writing the bank that he saw the pass book in the possession of " Mrs." Back, his wife.

Upon such a showing, the defendant appeals to the discretion of the court and seeks to deposit the fund with the court, interplead Mrs. Back, and then step out of the picture.

The plaintiff insists that the amendment to the statute found in subdivision 5 of section 250 of the Banking Law compels the court as a matter of law to deny the defendant's application.

I do not believe the plaintiff gives the proper construction to subdivision 5. He places too much faith in the literal and abstract meaning of certain words and by isolation and interpretation, independent of the balance of the statute, seeks to control the meaning and effect of prior subdivisions of the same act. He pins his reliance on the clause which in substance provides that notice to a savings bank " shall not be effectual to cause said savings bank to recognize said adverse claimant unless said adverse claimant shall " comply with certain requirements set forth in subdivision 5. He argues that in the absence of compliance there cannot be any interpleader.

How can a statute be properly and correctly interpreted without a knowledge of its history? The court cannot carry out the mission of the law unless it knows the original objective. No statute recites these facts. One must search elsewhere for their record.

Legislation is born of intent. Counsel in this case very graciously inquired about the conception of this statute, but with limited success. With some effort they located the introducer of this legislation, who is now resident in the State of California. His recollection has only confirmed our impression. The bill was introduced at the instance of a State department and represented the views of the department rather than his own individual ideas.

Notwithstanding the words in which the law is couched may be simple, we cannot read the meaning of a statute by just looking at the words and considering nothing else. The motive behind an act has much to say about its meaning; for the language is just a means of expression, and not the end to be served. Necessarily, therefore, our view must include the setting in which we find the statute. (*Kittredge* v. *Grannis*, 244 N. Y. 182, at p. 190; *Siman* v. *Hermann*, 129 N. Y. Supp. 1014, at p. 1018.)

Before subdivision 5 of section 250 of the Banking Law was enacted, the Legislature had already considered and passed upon this very subject, and had adopted a law for the protection of the savings bank. The purpose of that statute has been judicially defined.

" The section is applicable to savings banks only, and its language is plain and specific. There is no requirement that the bank shall assume the burden of giving proof to sustain the claim made, as a condition of having the benefit of the section. It is only required to show that a claim is made, and then the court has power and is called upon to exercise the discretion conferred upon it by the statute. The discretion is, however, a judicial one, and is not to be arbitrarily exercised. All further showing as to the claim, besides the fact that it is made, is addressed to the discretion of the court and the proper exercise thereof. Whether it should be exercised in favor of the bank in any case will depend upon the facts in that particular case. There should be no fixed rule that the relief be denied, unless the bank gives some proof to support the claim. If, as contended by the plaintiff here, the bank were required to give such proof, the section would often be of no value in cases where it was most needed, because the claimant might refuse absolutely to disclose its proofs in advance of the trial for the benefit of the plaintiff. * * *

" The object of this statute is to relieve these savings banks from two or more litigations over the same deposit, with all the expense attending the same, and the danger of having to pay the amount of the deposit to two or more different persons. A recovery by one claimant would be no bar to a recovery of the same deposit by as many others as might severally claim the same. If the court is satisfied that there will be other suits brought by the claimants against the bank, unless they are brought into the suit already pending, should the relief be denied because the claims made are not shown by the bank to be good ones?" (*McGuire* v. *Auburn Savings Bank*, 78 App. Div. 22, at pp. 25, 26. See, also, *Gifford* v. *Oneida Savings Bank*, 99 id. 25.)

The Legislature has not modified or repealed these provisions. Subdivision 5 is not a substitute; it is a supplement to the previous subdivisions of section 250. Nor does it subtract; to the contrary, it adds to the provisions already enacted.

The plaintiff insists that the statute is mandatory that the bank must require the claimant to furnish the bond or secure the order or the bank cannot give any recognition to the claim.

To render such a construction of subdivision 5 spells the destruction of subdivision 1 of section 250. Instead of giving the bank a

privilege of an additional protection, such a construction would give it less protection and would impose an additional obligation.

To hold that the bank must insist on these requirements presumes that upon compliance, interpleader must be granted.

What, then, becomes of the discretion of the court?

" It is to be noticed that the terms of the provision of the Banking Law quoted do not make it mandatory upon the court to make the order upon application. It is left discretionary with the court to grant or refuse the application." (*Steiner* v. *East River Sav. Inst.*, 60 App. Div. 232, at p. 235. See, also, *Hemmerich* v. *Union Dime Sav. Inst.*, 144 id. 413.)

Due recognition of the authority of the court, as well as of the rights of the bank, avoids inconsistency and still leaves open the door of ample remedy to the depositor. For if the depositor can show the claim is baseless, the court will not grant the interpleader.

" There may undoubtedly be cases where the claim of the third party is shown to be so devoid of merit as to call upon the court to refuse its discretion in favor of the bank. Such a case was the one cited by the plaintiff." (*McGuire* v. *Auburn Savings Bank, supra,* at p. 26.)

It seems to me, therefore, that to give subdivision 5 the meaning the plaintiff contends, would disrupt the entire scheme of these statutes, write inconsistency into the law, and defeat the very purpose that prompted their passage.

The motion of the bank for interpleader is granted. Submit long-form order. Two days' notice.