ALBERENE STONE COMPANY, Plaintiff, *v.* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, Special Term, New York County, April 26, 1937.

*Charles Howard Levitt*, for the plaintiff and for the defendants Murray & Sorensen, Inc., and Metropolitan Sheet Metal Works, Inc.

*Benjamin P. De Witt*, for the defendant Grinnell Co., Inc.

*Herman Goldman*, for the defendant Robert A. Keasbey Company.

*Francis Dean*, for the defendant Edward V. McGovern Corporation.

*Nichols & Snevily*, for the defendant Cornell & Underhill, Inc.

*Eugene V. King*, for the defendant Elkay Manufacturing Company.

*Maxwell Berman*, for the defendant Spencer Turbine Company.

*Harold L. Strauss*, for the defendant Croker Fire Prevention Corporation.

*Siegmiester & Rayfiel*, for the defendant United States Hoffman Machinery Corporation.

*Harry Schapiro*, for the defendant Claremont Steel & Ornamental Works, Inc.

*Huntington & Hill*, for the defendants Becker Valve and Specialty Corporation and Thermo-Mix, Inc.

*Keilin & Armeny*, for the defendant Pacific Foundry Company, Ltd.

*Paul Windels*, for the defendants Board of Education of the City of New York and the City of New York.

*Howard Henig*, for the defendants Benjamin S. Zorwitz and Samuel D. Montgomery, as trustees pursuant to section 27 of the Lien Law.

*Wood, Malloy & France*, for the defendant Loomis-Manning Filter Distributing Company.

*Louis Goldfarb*, for the defendant Eastern Bronze & Wire Works, Inc.

HAMMER, J. The decision involves the construction of subdivision 6 of section 21 of the Lien Law. Several authorities must be given careful consideration, as they are at variance. *Bethlehem Fabricators* v. *W., T. & M. Corp.* (272 N. Y. 170) was decided by the Court of Appeals November 24, 1936, and would no doubt be regarded as controlling except that the last paragraph of the opinion stated the following: " In this particular case where no other lienor has asked to be heard and in which no possible injury to them is shown, the issue of law propounded by the State seems to be no more than academic." Relying upon the authority and argument of that

case, I recently held in the action of *Miller-Schlott, Inc.*, v. *McGovern, Inc.* (unreported), that the plaintiff lienor, whose lien was discharged under subdivision 6 of section 21, and whose lien was valid, was entitled to the retained fund or so much thereof as his proof warranted. There the contractor had to its credit a sum of money due and payable withheld by reason of the filing of a notice of lien against such money by a subcontractor which was in excess of the amount claimed in such notice. The contractor obtained an order from the Supreme Court discharging such lien and directing the comptroller and commissioner of corrections to retain a sum of money, not less than the amount claimed as lien, etc., and to pay over the balance to the contractor, the retained amount to be kept until the lien was otherwise discharged as provided in section 21. There Grinnell Co., Inc., was a general lienor. Upon the trial, however, the question of the right of a subsequent general lienor was not urged by any lienor. Here Grinnell Co., Inc., is the subcontractor whose lien has been discharged under subdivision 6 of section 21. Quite naturally it points to my previous ruling and relies, as I did, upon the *Bethlehem Fabricators* decision.

In *Arrow Iron Works, Inc.*, v. *Greene* (260 N. Y. 330) it was held that when a sum is deposited by the contractor pursuant to subdivision 4 of section 21 for the purpose of freeing from the claim of the lienor the moneys due the contractor, the lienor may have no other relief than payment of the sum deposited, and may not recover from the general fund. Since he may not participate with other lienors in the general fund, the statute must be deemed to intend that they (general lienors) may not partake of the specific fund. After a lien has been discharged under subdivision 4 or 5 it is completely discharged against any general fund which may then exist or be later created. (*Bethlehem Fabricators* v. *W., T. & M. Corp*, 272 N. Y. 170, at p. 175.) With the above no authority is in disagreement. All agree that, where the contractor to discharge a lien under notice filed deposits money not connected with the contract, it is a special earmarked fund for the payment exclusively of any amount due and payable under the notice of lien.

It is my opinion that, where an amount is retained under subdivision 6 of section 21 from the money due and payable to the contractor to be held until the lien is otherwise discharged under the section, such sum also is a special fund earmarked for the payment exclusively of any amount due and payable under the notice of lien. It is the sole fund to which the lienor may look for payment and in which he has the primary right to the exclusion of subsequent lienors. If there are several liens filed at the time of the discharge, without question they would be entitled to priority or

parity provided for under section 25. In *International Harvester Co.* v. *Whelan* (247 App. Div. 215) there were two discharged liens. I see no difference between the deposit of other moneys under subdivision 4 or the giving of an undertaking under subdivision 5 and the application under subdivision 6 of an amount which was then due and payable and, but for the notice of lien filed, would be paid over with the rest of the amount then also due and payable. It is, of course, recognized that the Lien Law was rewritten to make it more equitable to laborers, contractors, architects, engineers and materialmen contributing labor and materials in the improvement, and to prevent priority except as provided in the statute. However, subdivision 6 is such a provision. It permits the contractor to apply part of the funds due and payable which, but for the notice of lien, are available for payment and would be paid to him, for the purpose of discharging the subcontractor's lien by having part of the fund retained instead of depositing other money under subdivision 4, or an undertaking under subdivision 5. In so far as the discharged lienor's primary right is concerned, the transaction may be in the nature of a priority, as against subsequent lienors. If it is a priority it is one intended to be and actually provided for by the statute. The use of the contractor's money then payable from the improvement, as authorized by the statute, is a convenient alternative to the contractor which effectually accomplishes the discharge and confines the lienor to the enforcement of his lien against the retained fund. Such discharge and confinement brings about the same result as the methods provided for under subdivisions 4 and 5, and is as much of a detriment to the lienor and is more advantageous to the contractor. The detriment is that, if the lienor's claim is valid and past due, which is conceded to be the fact here, he is entitled to immediate payment, but the discharge postpones such payment and puts the lienor to his proof. The discharge transfers the lien from the general fund to a primary dominant interest in the specific fund retained. The lienor, in effect, owns that part or amount to which at the time he filed his lien he was justly entitled. The balance, if any there be, is a secondary or subservient part, which remains as part of the general fund due the contractor. As such it is available to those subsequently entitled to file notice of lien and is also trust funds under section 25, to be applied to the payment of claims arising out of the improvement. The judgment in an action of foreclosure determines the discharged lienor's right as of the date of filing his notice of lien as well as of the date of the discharge. In respect of the primary dominant interest, the subsequent lienors are not on a parity with the discharged lienor.

The discharged lienor is excluded from any right in the general fund of which the secondary or subservient part of the special fund remains a part. I can see no logical reason why the discharged lienor should receive less through the subdivision 6 method which is more advantageous to the contractor in that he is freed from the deposit of money not connected with the contract under subdivision 4 or the undertaking (no doubt with the necessity of collateral) under subdivision 5. I can see no logical reason why or how the discharged lienor would be preferred to the subsequent general lienors under discharge accomplished under subdivisions 4 or 5, unless he is also preferred to them under subdivision 6. It cannot be assumed that the Legislature would thus unfairly discriminate against the discharged lienor in providing the advantageous subdivision 6 method for the contractor. The amount and more (here approximately $25,000, of which the lienor's claim was about $10,000) was due and payable to the contractor and as the discharged lienor's lien and claim are conceded to have been valid in amount and past due, same was payable and no doubt would have been paid by the contractor from the payment if received. Upon such payment of a just claim past due the moneys paid would not have been available to subsequent lienors or remain trust funds under section 25. There does not appear to be any difference in effect whichever method of discharge is used. That seems to be the legislative intent expressed in the statute. That was the statement by the Court of Appeals in *Bethlehem Fabricators* v. *W., T. & M. Corp.* It was my opinion when I tried and ruled in the *Miller-Schlott, Inc.,* v. *McGovern, Inc.,* action, and although I have carefully read and considered the cases cited my opinion remains unchanged. The other cases which must be considered will now be examined: *Miller-Schlott* v. *McGovern Corp.* (241 App. Div. 852), in which plaintiff claimed a special fund and did not join subsequent general lienors. The defendant McGovern moved to dismiss for non-joinder of the general lienors. The motion was granted at Special Term. The Appellate Division reversed. Thereafter the city of New York asserted a counterclaim for damages for breach of contract against the special fund. The counterclaim on plaintiff's motion was stricken out by the Special Term. The Appellate Division affirmed (*Miller-Schlott, Inc.,* v. *McGovern,* 243 App. Div. 506). In *Alberene Stone Co.* v. *Board of Education,* which is the very action on trial, on motion for summary judgment by Grinnell Co., Inc., the Special Term, COTILLO, J., denied same (153 Misc. 812), and on appeal the Appellate Division affirmed, without opinion (244 App. Div. 711), and leave to appeal to the Court of Appeals was denied

without opinion (244 App. Div. 775). In *International Harvester Corp.* v. *Whelan* (247 App. Div. 215) the Appellate Division, Third Department, in construing Lien Law, section 21, subdivision 6, by a three to two decision, held that a specific fund retained for a lien under subdivision 6 was available to all subsequent lienors. *Bethlehem Fabricators* v. *W., T. & M. Corp. (supra)* was an affirmance of the Appellate Division, Second Department (248 App. Div. 331). In *American Tube Works* v. *McGovern Corp.* (162 Misc. 406), COTILLO, J., has written a learned opinion in which it is held that there is an essential difference in character between new moneys deposited under subdivision 4, no part of which would be available to general lienors, and contract moneys which if the discharged lienor failed in whole or part would in any event be available to general lienors. This distinction has been in my mind and presents some difficulty, which seems to disappear when it is also considered that the contractor were it not for the notice of lien discharged under subdivision 6 would have been paid the entire amount then due and payable and same would not be available to subsequent general lienors except as I have pointed out above and also in so far as any part became trust funds under other appropriate provisions of the Lien Law. The subsequent lienors in the action at bar insist that the statements in the *Bethlehem Fabricators* case upon which Grinnell Co., Inc., relies are dicta and not controlling here. It is not necessary to decide the point. It is my opinion that excellent law is stated which if not controlling is so persuasive that it must be accepted here, unless and until it is overruled or modified by our highest court. Nor am I unmindful of the requirement that the law of the case as decided by the Appellate Division should be followed by the Trial and Special Terms. The general lienors assert the law of this case has been announced in 244 App. Div. 711, and Id. 775. Since the decision of the Court of Appeals in the *Bethlehem Fabricators* case was before the Appellate Division at least when application to reargue 244 App. Div. 711 was decided in 249 id. 801, it may be assumed that the decision of affirmance of the order denying summary judgment was upon the ground that a triable issue was presented. These facts had been in dispute. There is now no dispute presented as to the facts. The amount, $10,441.26, and validity of the Grinnell Co., Inc., lien are conceded. That lien was discharged by order pursuant to section 21, subdivision 6, and the comptroller retained and still holds $11,300 thereunder to cover the amount of such lien, with costs, expenses and interest. The subsequent lienors have liens amounting to $20,165.71 which are undisputed as to amount and validity. There is an undetermined sum of approximately $6,375.50

deemed available in addition to the retained sum of $11,300, making a total of $17,675.50. The issue is that Grinnell Co., Inc., claims the entire retained sum of $11,300, and the general lienors claim that same and any additional amount, seemingly approximating $17,675.50 under the Lien Law, must be divided on a parity among Grinnell Co., Inc., and the subsequent lienors.

It is my opinion that Grinnell Co., Inc., is entitled to the retained fund of $11,300.

Submit proposed findings, decision and judgment on notice.