COMMUNITY VOLUNTEER FIRE COMPANY OF NIMMONSBURG, INC., Plaintiff, *v.* THE CITY NATIONAL BANK OF BINGHAMTON, Defendant.

Supreme Court, Broome County, August 28, 1939.

*Moody & Chamberlain* [*Raymond H. Moody* of counsel], for the plaintiff.

*E. Day Clark* [*Frank E. Thomas* of counsel], for the defendant.

*Charles T. Keane, Jr.,* for claimants Allie Burke, August Harder, Edward Hendricks and Jess Shear.

GOLD (A. E.), J. Plaintiff, a membership corporation, sues to recover a bank deposit standing in the name of its predecessor, the Community Volunteer Fire Company of Nimmonsburg, New York, an unincorporated association. The defendant moves to interplead other claimants.

The fire company was organized to provide fire protection for the village of Nimmonsburg, N. Y. The money was raised to purchase a lot and to erect a fire house thereon.

The four claimants are former members of the unincorporated association. Three were expelled by vote when a dispute arose over the location of the lot and the other resigned. This occurred before incorporation. After incorporation the four notified the bank by an attorney that they were entitled to proportionate shares of the money. The bank feels for that reason that it cannot pay the plaintiff with safety.

Plaintiff opposes interpleader on the ground that the claims are wholly without merit.

Section 12 of the Membership Corporations Law provides: " An unincorporated association, society, league or club, not organized for pecuniary profit, may be incorporated under this chapter for the purposes for which it was organized, if all of such purposes are purposes for which a corporation may be formed under this chapter, and thereupon the members of such association, society, league or club shall be members of the corporation so created, and all property owned by or held for it shall belong to and vest in the corporation, subject to all existing incumbrances and claims as if incorporation had not taken place."

That the plaintiff has title to the deposit seems clear. (*Associate Alumni* v. *Theological Seminary*, 163 N. Y. 417, 421; *Tioga County General Hospital* v. *Tidd*, 164 Misc. 273, 285.) The members of the unincorporated association have no claim. That would be true even of those, if any, who opposed incorporation. " A majority is entitled to control, and the minority, however hard it may be, must submit." (*Ostrom* v. *Greene*, 161 N. Y. 353, 365.)

The claimants are in no better position. Not being members then, they were not called upon to vote either for or against incorporation. The three who were expelled could have sued for reinstatement. (*People ex rel. Deverell* v. *Musical Mutual Protective Union*, 118 N. Y. 101.) But the expulsion, even if wrongful, gave them no right to share in the assets since an unincorporated association is not a partnership. (*Ostrom* v *Greene*, 161 N. Y. 353; *LaFond* v. *Deems*, 81 id. 507, 514.)

There may be some other basis for the claims, but, if so, it has not been disclosed. The bank, of course, has no information. It pays the plaintiff at its peril, or so at least it has been warned. Accordingly, it seeks protection by interpleader. Should the protection be given when the adverse claims, so far as appears here, seem to be without merit?

If this were an ordinary action the answer would be certain. (Civ. Prac. Act, § 286; *Pouch* v. *Prudential Ins. Co.*, 204 N. Y. 281, 286.) " It is still the rule that an adverse claim must be shown to have some reasonable foundation before interpleader is permitted." (*McNamara* v. *Knights of Columbus*, 206 App. Div, 364, 365.)

Controversies over bank accounts, however, are governed by the Banking Law. Section 134, subdivision 6, paragraph (a), provides as follows: " In all actions against any bank or trust company to recover for moneys on deposit therewith, if there be any person or persons, not parties to the action, who claim the

same fund, the court in which the action is pending, may, on the petition of such bank or trust company, and upon eight days' notice to the plaintiff and such claimants, and without proof as to the merits of the claim, make an order amending the proceedings in the action by making such claimants parties defendant thereto; and the court shall thereupon proceed to determine the rights and interests of the several parties to the action in and to such funds. The remedy provided in this section shall be in addition to and not exclusive of that provided in section two hundred eighty-seven of the Civil Practice Act."

The section applies to " any bank or trust company," and there is little doubt that deposits in national banks are included. (*Herrick* v. *Hamilton*, 160 Misc. 440, 443; *Matter of Garlock*, 157 id. 571, 572; *Blessing* v. *First National Bank of Silver Creek*, 132 id. 514.)

Section 134, subdivision 6, paragraph (a), enacted in 1914 (Laws of 1914, chap. 369, § 199), was derived from an identical statute applicable to actions against savings banks. (Banking Law, § 239, subd. 6, ¶ [a].) The latter has been in effect since 1882. (Laws of 1882, chap. 409, § 259, re-enacted without substantial change, Laws of 1892, chap. 689, § 115; Laws of 1909, chap. 10, § 145.) It was not until 1914, however, that the words " without proof as to the merits of the claim " first appeared. (Laws of 1914, chap. 369, § 250.) Before then there was a marked division of opinion. Some cases held that interpleader should be governed by the same rules substantially as apply to actions generally. " The court * * * should be able to see that there is some foundation for the claim of a third party, and that it is not merely capricious or arbitrary or fanciful." (*Steiner* v. *East River Savings Bank Inst.*, 60 App. Div. 232, 236; *Mars* v. *Albany Savings Bank*, 64 Hun, 424.)

Others decided that a bank " is only required to show that a claim is made, and then the court has power and is called upon to exercise the discretion conferred upon it by the statute." (*McGuire* v. *Auburn Savings Bank*, 78 App. Div. 22, 25; *Mahro* v. *Greenwich Savings Bank*, 16 Misc. 537.)

There is now no reason for serious doubt. The language " without proof as to the merits of the claim " makes the legislative intent clear. The bank need show only that an adverse claim has been made without collusion on its part. Further it is not required to go. The strength or weakness of the claim is not controlling. It is enough that the bank is exposed to the danger of another action with the consequent inconvenience and expense.

This interpretation of the statute is obviously in harmony with its purpose. A bank is in a different position from an ordinary

stakeholder. It accepts deposits from the public generally as a business. Seldom does the relationship result in sufficient knowledge to pass upon the merits of conflicting claims. To require investigation would impose an unreasonable burden. The inquiry, moreover, would usually be futile. "If * * * the bank were required to give such proof, the section would often be of no value in cases where it was most needed, because the claimant might refuse absolutely to disclose its proofs in advance of the trial for the benefit of the plaintiff." (*McGuire* v. *Auburn Savings Bank*, 78 App. Div. 22, 25.)

It is true that the hazard of double liability is no longer serious. Subdivision 5 of section 134 of the Banking Law provides: " Notice to any bank or trust company of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause said bank or trust company to recognize said adverse claimant unless said adverse claimant shall also either procure a restraining order, injunction or other appropriate process against said bank or trust company from a court of competent jurisdiction in a cause therein instituted by him wherein the person to whose credit the deposit stands or his executor or administrator is made a party and served with summons, or shall execute to said bank or trust company, in form and with sureties acceptable to it a bond, indemnifying said bank or trust company from any and all liability, loss, damage, costs and expenses, for and on account of the payment of such adverse claim or the dishonor of the check or other order of the person to whose credit the deposit stands on the books of said bank or trust company."

This provision, however, is not intended to supplant interpleader, but, on the contrary, to give banks additional protection. (*Back* v. *Bowery Savings Bank*, 162 Misc. 403, 406.) Its application is doubtful here in any event since the deposit is not in the name of the plaintiff but of the unincorporated association.

There is authority to support these conclusions, although the decisions are not numerous. (*Evans* v. *Guaranty Trust Co.*, 187 App. Div. 30, 34; *Danziger* v. *Amalgamated Bank of City of New York*, 143 Misc. 126; *Gaudy* v. *Corn Exchange Bank & Trust Co.*, 139 id. 712, 715; *New York Trust Co.* v. *Braham*, 126 id. 462. Cf. *Sasanow* v. *Williamsburg Savings Bank*, 256 App. Div. 928.)

The cases cited by plaintiff are not controlling. *Steiner* v. *East River Savings Inst.* (60 App. Div. 232) was decided under the section applicable to savings banks but before the addition of the words " without proof as to the merits of the claim." The other decisions deal with claims other than bank deposits. (*Baltimore & Ohio R. Co.* v. *Arthur*, 90 N. Y. 234; *Williams* v. *Ætna Life Ins.*

*Co.*, 44 Hun, 631; *Nassau Bank* v. *Yandas*, Id. 55; *Feldman* v. *Grand Lodge A. O. U. W.*, 19 N. Y. Supp. 73.)

No right of the plaintiff is seriously prejudiced by interpleader. True, some delay will occur, but it should not be great. When interpleader becomes complete, plaintiff may move for summary judgment. The validity of the adverse claims will then be determined unless they involve disputed questions of fact which is unlikely.

One other matter may be mentioned. It was stated on oral argument, but not substantiated, that the deposit in part represented proceeds from a form of gambling known as " Bingo." Claimants suggest that the money is, therefore, so tainted with illegality that the plaintiff is not entitled to recover in any event. The point, however, is not seriously pressed, and is obviously without merit. The source of money is of no consequence here. The single question is whether the case is one for interpleader.

The motion is granted. Order signed.