ARROW IRON WORKS, INC., Respondent, v. HARRY B. GREENE, Doing Business under the Name of H. B. GREENE CONTRACTING Co., et al., Defendants; BANK OF YORKTOWN, Appellant; NATIONAL SURETY COMPANY, Appellant and Respondent, and EMPIRE BRICK AND SUPPLY CORPORATION et al., Respondents.

(Argued October 18, 1932; decided November 29, 1932.)

*Richard J. Mackey* and *John Taylor Breen* for appellant. The assignment, having been made to secure advances by the bank and having been filed in the proper offices prior to the filing of any mechanic's lien, takes precedence over the liens in the distribution of the fund. (*Hall* v. *City of New York*, 79 App. Div. 102; 176 N. Y. 293; *Hackett* v. *Campbell*, 10 App. Div. 523; 159 N. Y. 537; *Riverside Contracting Co.* v. *City of New York*, 218 N. Y. 596; *Edison Electric Illuminating Co.* v. *Frick Co.*, 221 N. Y. 1; *Anderson* v. *Hayes Construction Co.*, 243 N. Y. 140.) The clause in the contract which requires the contractor to furnish satisfactory evidence that there were no outstanding liens or claims for material furnished or labor performed on the work is solely for the benefit of the State and the lienors cannot claim any advantage therefrom. (*Riverside Contracting Co.* v. *City of New York*, 218 N. Y. 596; *Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322; *Fortunato* v. *Patten*, 147 N. Y. 277; *Willard Co.* v. *City of New York*, 81 Misc. Rep. 48; *Contractors Supply Co.* v. *City of New York*, 153 App. Div. 60; *Hackett* v. *Campbell*, 10 App. Div. 523.) The default of the contractor does not impair the rights of the assignee since there is an excess over the cost of completion and not a deficit. (*Fraenkel* v. *Friedman*, 199 N. Y. 351; *Beardsley* v. *Cook*, 143 N. Y. 143.)

*Michael M. Helfgott* for National Surety Company, appellant and respondent. The unearned moneys in the contract should have been applied first to the payment to the surety of its cost of completion, with interest. (*Lacey* v. *Maryland Casualty Co.*, 32 Fed. Rep. [2d] 48; *Prairie State Nat. Bank* v. *United States*, 164 U. S. 142; *Laski* v. *State*, 212 N. Y. Supp. 675; 246 N. Y. 569; *Harley* v. *Mapes Reeve Const. Co.*, 33 Misc. Rep. 626; *Herman* v. *Hillman*, 203 N. Y. 435; *Fraenkel* v. *Friedman*,

199 N. Y. 351.) The plaintiff should have been confined to the deposit of $2,500. The payment of $612.18 as costs and an extra allowance out of the balance in the contract, whether out of retained percentage or the unearned moneys in the contract, was error. (Lien Law, § 21; *Berger Mfg. Co.* v. *City of New York*, 206 N. Y. 24; *Milliken Brothers* v. *City of New York*, 201 N. Y. 65; *Fischer* v. *Hussey*, 11 Misc. Rep. 529; *Matter of Dean*, 83 Hun, 413; *Upson* v. *United Engineering & Contracting Co.*, 72 Misc. Rep. 541.) The assignment to the bank was not filed as required by the Lien Law and is invalid as against the lienors and the surety. (Lien Law, § 16; *Carroll Sand Co.* v. *Jones, Inc.*, 231 App. Div. 121; 256 N. Y. 99; *General Fireproofing Co.* v. *Keepsdry Construction Co.*, 225 N. Y. 180; *Albany Builders' Supply Co.* v. *Eastern Bridge & Structural Co.*, 235 N. Y. 432; *Glens Falls Portland Cement Co.* v. *Van Wirt Construction Co.*, 132 Misc. Rep. 95; *Italian Mosaic Co.* v. *City of Niagara Falls*, 131 Misc. Rep. 281.) As between the lienors, surety and the assignee bank, the court correctly held that the bank should be paid only after the valid liens and the surety's cost of completion shall have been paid. (*Laski* v. *State*, 212 N. Y. Supp. 675; *Harley* v. *Mapes Reeve Const. Co.*, 33 Misc. Rep. 626; *Lacey* v. *Maryland Casualty Co.*, 32 Fed. Rep. [2d] 48; *Herman* v. *Hillman*, 203 N. Y. 435; *Fraenkel* v. *Friedmann*, 199 N. Y. 351; *Prairie State Nat. Bank* v. *United States*, 164 U. S. 142; *Southern Surety Co.* v. *Holden*, 14 Fed. Rep. [2d] 411; *Ogden* v. *Alexander*, 140 N. Y. 356; *United States* v. *Rundle*, 107 Fed. Rep. 227.) The prior assignment to the surety is effective and valid as against the assignee bank. (*Edison Electric Co.* v. *Frick*, 221 N. Y. 1.)

*Jacob B. Lindner* for plaintiff-respondent. The plaintiff's lien was filed before any valid assignment by the bank, and, therefore, takes precedence over such assignments. (Mechanics' Lien Law, § 16; *General Fireproofing Co.* v. *Keepsdry Construction Co.*, 225 N. Y. 180; *Glens*

*Falls Portland Cement Co.* v. *Van Wirt Construction Co.,* 132 Misc. Rep. 95; *Albany Builders Supply Co.* v. *Eastern Bridge & Structural Co.,* 235 N. Y. 432.) The contractor having made one assignment of the money due it under the contract, had nothing further to assign and any subsequent purported assignment is a nullity. (*Edison Electric Co.* v. *Frick,* 221 N. Y. 1; *Carroll Sand Co.* v. *Jones,* 256 N. Y. 99.)

*Talbot M. Malcolm* for Empire Brick and Supply Corporation, respondent. The assignee bank should be paid only after the valid liens and the surety's cost of completion have been paid. (*Laski* v. *State,* 212 N. Y. Supp. 675; 217 App. Div. 420; 246 N. Y. 569; *Harley* v. *Mapes Reeve Const. Co.,* 33 Misc. Rep. 626; *Herman* v *Hillman,* 203 N. Y. 435; *Fraenkel* v. *Friedmann,* 199 N. Y. 351; *Lacey* v. *Maryland Casualty Co.,* 32 Fed. Rep. [2d] 48.)

*Emanuel M. Ostrow* for J. J. Fisher Company, Inc., respondent. The surety's completion of the contract upon the contractor's default materially affected the rights of the respective parties and clearly gave the lienors superior rights over the assignee even had the bank's assignment been duly filed. (*Laski* v. *State of New York,* 126 Misc. Rep. 360; 217 App. Div. 420; 246 N. Y. 569.)

*Arthur H. Printz* and *Edward C. O. Thomas* for Lawton-Stephens Co., Inc., respondent. The lien of defendant is superior to the assignment of the bank. (*Laski* v. *State of New York,* 126 Misc. Rep. 360; 217 App. Div. 420; 246 N. Y. 569.)

*Scott Scammell* and *John Hall Forbes* for Richey, B owne & Donald, Inc., respondent. Both the retained percentage and the unearned moneys in the contract should be first applied to the payment of the valid claims of lienors with interest prior to the payment to the surety of its cost of completion with interest. (*Laski*

v. *State of New York*, 217 App. Div. 420; 246 N. Y. 569; *Audley Clarke Co.* v. *Plass & Bro., Inc.*, 187 App. Div. 904; *Maneely* v. *City of New York*, 119 App. Div. 376; *Harley* v. *Mapes Reeves Constr. Co.*, 33 Misc. Rep. 626; *Matter of National Surety Co.* v. *Wallace*, 221 App. Div. 506.)

*George G. Lake* and *Emanuel Goodman* for Astride Pardi et al., respondents. The assignment of the bank was never properly filed as required by section 16 of the Lien Law. (*Carroll Sand Co.* v. *Jones, Inc.*, 256 N. Y. 99.) The respondents may avail themselves of the position of the State, that they must be paid before any payments are made to the contractor or the assignee. (*Pacific Coast Steel Co.* v. *Old National Bank*, 134 Wash. 457; *Mechanics & Traders Nat. Bank* v. *Winant*, 123 N. Y. 265; *Riverside Contracting Co.* v. *City of New York*, 218 N. Y. 596.)

KELLOGG, J. The defendant Harry B. Greene, on the 12th of April, 1928, entered into a contract with the State of New York, for the erection of certain buildings, at the agreed price of $118,700. On the 14th of May, 1929, Greene, having performed work and supplied material of the agreed value of $107,795.94, abandoned the contract. Greene had then been paid $91,541.55, or approximately eighty-five per cent of the value of the work and materials furnished. This left unpaid, approximately, fifteen per cent of the amount already earned, or $16,254.39, which the State withheld as " retained percentages " to secure the completion of the contract. Greene had also furnished labor and materials, in excess of the contract requirements, of the agreed value of $1,837.04. The contractor, Greene, as principal, and the National Surety Company, as surety, had previously delivered their bond to the State for the faithful performance of the contract. On the default of the contractor the National Surety Company, took over the work and

completed the same. At completion, there became payable by the State, for work done prior to abandonment, the sum of $18,091.43, consisting of the item of "retained percentages," $16,254.39, and the item of extras, $1,837.04. These items, since they were earned by the contractor before abandonment, may be termed "earned moneys." There also became due the sum $10,904.06, being the difference between the amount earned by the contractor, prior to abandonment, and the contract price of $118,700. This item may be termed "unearned moneys," since it became due, not through the efforts of the contractor, but through those of the surety company, which completed the work. There is thus held for distribution among creditors the sum of $28,995.49.

On the 27th day of April, 1929, the plaintiff filed in the proper offices a notice of lien against the moneys due or to grow due upon the contract, for work and materials furnished. The amount claimed to be due was the sum of $2,285. On May 15, 1929, the contractor applied to the Supreme Court, and procured an order discharging the lien, conditioned upon his depositing with the Comptroller of the State the sum of $2,500. The sum named was deposited and no appeal from the order was taken. The proceeding was had in compliance with section 21 of the Lien Law (Cons. Laws, ch. 33), which provides that a lien against moneys due from a contract made by the State for a public improvement may be discharged by the deposit of money with the State Comptroller. The deposit must be " such a sum of money as is directed by a justice of the Supreme Court, which shall not be less than the amount claimed by the lienor, with interest thereon for the term of one year from the time of making such deposit, and such additional amount as the justice deems sufficient to cover all costs and expenses." The amount so deposited shall remain with the Comptroller " until the lien is discharged " as provided in subdivision 3 of the section, or certain other subdivisions named.

The subdivision so numbered provides for a discharge by "satisfaction of a judgment rendered in an action to enforce the lien." Therefore, in order to make the deposit available in satisfaction of its lien, it was necessary for the plaintiff to institute an action to foreclose the lien, and for this purpose the present action was instituted. After a trial herein before the Special Term, the court found that the amount then due the plaintiff was $2,195, with interest amounting to $241.45, aggregating $2,436.45, and directed that this amount be paid by the State from the $2,500 deposit. It further adjudged that the plaintiff recover as costs and disbursements the sum of $475.73, together with an extra allowance of $200, or in all $675.73. The judgment entered provides that after exhausting the balance of the deposit, these costs be satisfied and paid from the "earned" and "unearned" moneys due upon the contract. We think that this was error.

"Subdivision 4 of section 21 of the Lien Law provides for the discharge of a lien by the deposit of a sufficient sum of money. In such case the sum deposited is a substitute for the fund to which the lien attached until the deposit was made. A valid lien on the primary fund must, therefore, be established to justify payment out of the deposit." (*Milliken Bros., Inc.*, v. *City of New York*, 201 N. Y. 65, 74.) In order to effectuate a discharge, the amount ordered deposited must be fixed at a sum, "which shall not be less than the amount claimed by the lienor," with interest for one year, "and such additional amount as the justice deems sufficient to cover all costs and expenses." (Lien Law, § 21.) These "costs and expenses" are clearly those of an action to foreclose the lien, a proceeding through which alone the deposit may become available to the lienor. The purpose of the provision is to free the moneys remaining payable from the claim of the lienor, so that thereafter the State may safely make payments to the contractor or other lienors, as it may

be advised. This result would not be achieved if, after the making of the deposit, the lienor might recover from the general fund the costs and disbursements of a foreclosure action which the deposit was not sufficient to satisfy. The reason that the present plaintiff must suffer rests in the fact that the order of discharge provided for an insufficient deposit, and from that order the plaintiff took no appeal. We think that the plaintiff may have no other relief than the payment to it of the sum deposited; that neither the "earned" nor "unearned" items, due upon the contract, are subject to any claim by the plaintiff.

The National Surety Company, after the abandonment of performance by the contractor, completed the work at a cost to it of $10,617.85. The item of "unearned moneys," which became due under the contract through its completion by the surety company, was $10,904.06. Even though interest upon the claim of the surety company may bring that claim to a figure in excess of the item of "unearned moneys," the company makes no claim to any portion of the item of "earned moneys," including "retained percentages," remaining unpaid at the time of the abandonment. Its claim, as stated in its brief, is merely this: "The 'unearned moneys' in the contract should have been applied first to the payment to the surety of its cost of completion with interest." It has been held, indeed, that a surety, which completes a contract, is entitled to be reimbursed for the expense thereof, not only from the "unearned moneys" of the contract, but from the "retained percentages" as well. (*Lacy* v. *Maryland Casualty Co.*, 32 Fed. Rep. [2d] 48, 51; *Prairie State Bank* v. *United States*, 164 U. S. 227.) In the first of these cases it was said: "The question arises whether this superior equity of the surety extends to the current estimates payable under the contract or merely to the retained percentage. We think that it extends to both." Again, it is said: "Upon his performance of

this contract, equity subrogates him to all rights of the obligee as against the principal. Now the obligee, upon default of the principal, is without doubt entitled to apply all moneys unpaid towards the performance of the contract, ignoring any assignments by the principal; and it necessarily follows that the surety upon performing the contract, being subrogated to the rights of the obligee, is entitled to the moneys unpaid so far as necessary to reimburse his loss."

The logic of the quoted statements is not easy of escape. Perhaps it may justly be said that the doctrine of subrogation is purely equitable; that it is not equitable that a surety should have a prior lien upon retained percentages, over and above all lienors and assignees whose labor, material and money created the fund; that, therefore, the surety may have no part in that fund. On the other hand, it is clearly equitable that a surety, which is alone responsible, through its completion of a contract, for the fact that the balance of the contract price accruing after abandonment does become payable, should first be reimbursed for its expenses out of the fund so arising. We hold that the National Surety Company is first entitled, above all other lienors, to the "unearned moneys," and that such moneys, amounting to $10,904.06, should be applied toward the extinguishment of its claim. Whether it would otherwise become entitled to reimbursement from the retained percentages we do not now decide.

The payment of the item of "unearned moneys" to the National Surety Company will leave for distribution among other claimants none other than the item of "earned moneys," consisting of the "retained percentages" and the sum due for "extras," amounting in the aggregate to $18,091.43. For this sum there are two sets of claimants, (1) the defendant Bank of Yorktown, claiming under a written assignment from the contractor of all moneys due or to grow due under the

contract, and (2) the eight defendant lienors whose claims have been allowed. The instrument of assignment, under which the Bank of Yorktown now claims, was executed by the contractor, Harry B. Greene, and delivered to the bank on May 16, 1929. At this time Greene was indebted to the Yorktown Bank for a balance of moneys previously advanced to him in the sum of $33,296.71, and this was the sum repayment of which the assignment was designed to secure. Concededly, this assignment was· filed in the appropriate offices, as provided by the Lien Law, on the 17th day of May, 1929. Concededly, it was after this date that the eight defendant lienors, having claims now totaling more than $18,500, filed their claims. It will be seen that either the' claim of the Yorktown Bank on the one hand, or the aggregate claims of the lienors on the other, will exhaust ·the fund of $18,091.43 remaining payable. Notwithstanding the fact that the assignment to the bank was first filed, it has been held that the defendant lienors, whose notices ·of lien were subsequently filed, are entitled to priority and must receive the contract moneys remaining unpaid.

The preponderance of authority, to the effect that an assignee of the moneys due or to become due under a contract for a public improvement, has priority over all lienors whose liens are subsequently filed, is ,overwhelming. (*Lauer* v. *Dunn*, 115 N. Y. 405; *McCorkle* v. *Herrman*, 117 N. Y. 297; *Stevens* v. *Ogden*, 130 N. Y. 182; *Beardsley* v. *Cook*, 143 N. Y. 143; *Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322; *Hackett* v. *Campbell*, 10 App. Div. 523; 159 N. Y. 537; *Hall* v. *City of New York*, 79 App. Div. 102; 176 N. Y. 293; *Riverside Contracting Co.* v. *City of New York*, 218 N. Y.. 596; *Anderson* v. *Hayes Construction Co.*, 243 N. Y. 140.)

The enactment of the provisions of section 16 of the Lien Law, which first appeared in section 15-a of the Lien Law of 1897, when amended and added to by chapter 692 of the Laws ·of 1907, did not alter the rule as-thus

firmly established. (*Riverside Contracting Co.* v. *City of New York, supra; Edison Electric Illuminating Co.* v. *Frick Co.*, 221 N. Y. 1; *Anderson* v. *Hayes Construction Co., supra.*) These provisions, so far as applicable, were merely to the effect that no assignment should be valid unless filed in certain offices named " within ten days after the date of such assignment," and should not be enforceable except from the date of filing. " The only effect of the statute on the assignment was to limit its operation by certain provisions concerning its filing." (Per HISCOCK, J., in *Riverside Contracting Co.* v. *City of New York, supra,* at p. 612.)

Excepting the provisions concerning filing, the law remains as stated by ANDREWS, J., in *McCorkle* v. *Herrman* (*supra,* at p. 305): " The assignee, under such an assignment, according to the general current of authorities, would take precedence over lienors under liens subsequently filed;" as stated[1] by GRAY, J., in *Bates* v. *Salt Springs Nat. Bank* (*supra,* at p. 327): " In the absence of anything to the contrary in the contract and before any notice is filed, the contractor may assign to his creditor, in payment of his debt, the whole, or any portion, of the moneys due, or to become due, under the contract and the assignee acquires a preference over a subsequent lienor." The law now existing, without the exception, is thus stated by CARDOZO, J., in *Anderson* v. *Hayes Construction Co.* (*supra,* at p. 147), " By section 16 of the act as construed in our decisions, the assignment takes precedence of liens subsequently filed."

The respondents cite *Laski* v. *State of New York* (126 Misc. Rep. 360; 217 App. Div. 420; 246 N. Y. 569, for the proposition that in such cases as this the order of payment should be to (1) the lienor, (2) the surety, and (3) the assignee. Undoubtedly that was the order adopted in that case. In giving our approval to the decision by an affirmance without opinion, we certainly did not intend, in the face of overwhelming authority to the

contrary, to countenance the proposition that the stated order was the order of priority generally to be observed. Nor did we intend to adopt the reasoning of the Special Term, that a lienor must have priority over an assignee, though the lien is filed subsequently to the filing of the assignment, because the assignee may take no more than the assignor-contractor, and the latter may, where filed liens are outstanding, take nothing except the excess over the liens. The argument fails to recognize that lienors and assignees have claims of a nature, if not identical, at least quite similar.

In *Anderson* v. *Hayes Construction Co.* (*supra*, at p. 150), Judge CARDOZO pointed out that, in such a case as this, it was fallacious to regard a lienor, under a mechanic's lien filed, as possessing a lien " on a specific *res* in the possession of the State; " that there was " no specific fund identified and earmarked; " that there was merely a cause of action against the State, held by the contractor; that the " lien " of materialmen or laborers might more fitly be characterized " as a right of subrogation to the contractor's cause of action." He concludes with this significant statement: " The lien attaches to the debt, and the lienors to the extent of their interests are statutory assignees." The position of the lienors, therefore, is no better than that of an assignee, since they are themselves assignees. That they have no greater right is thus stated by Judge GRAY in *Bates* v. *Salt Springs Nat. Bank* (*supra*, at p. 328): " The principle to be extracted from the cases is that a lienor obtains no greater right to the moneys payable by the owner, than the contractor has and if the latter has assigned to a creditor, *pro tanto*, the assignee gains a preference over subsequent liens." In the light of these opinions the reasoning in the *Laski* case produces this fallacy: Assignees and lienors may not recover when their assignor, the contractor, may not; the assignor may not recover because of assignments and

liens filed; therefore, the assignees and lienors may not. The argument proves too much, for, if sound, then the debtor state or owner, admitting the debt, may be relieved from its payment to any person.

In the *Laski* case these facts were considered: On November 4, 1922, the contractor for a public improvement assigned to a development corporation all the moneys due or to become due under the contract. After April 9, 1924, Laski, the plaintiff, filed a lien for materials and labor furnished. On that date the contractor refused to proceed with performance, and the surety took over the work, subsequently completing the same. Completion was had at an expense of $3,100.34. This was in excess of $2,582.31, the sum then becoming due from the State, which included $1,130.25 of " earned moneys," or " retained percentages " earned when the surety undertook to perform. If the doctrine of subrogation were applied strictly and the surety company were entitled to succeed to the rights of the State, in all their fullness, then it was entitled to the " earned moneys," as well as the " unearned moneys " which became due through its completion. However, there was outstanding a lien for $860.31, in favor of the plaintiff, Laski . Materials and labor, of the value stated in the lien, had been supplied by Laski, and had in part created the fund of " earned moneys " or " retained percentages." It was equitable that to this extent the surety should give way to the lienor. In the case of the assignee, there was no such equity, since there was no proof that any part of the moneys, for which the assignment was given, had been employed to furnish labor or materials for the performance of the contract. These may have been the considerations which induced our affirmance of the decision; certainly it was not the proposition that generally subsequent lienors should have priority over assignees.

The defendant lienors do not make the point that

generally subsequent lienors have priority over assignments previously filed, or that the general principle is other than we have stated it. Their points are (1) that, by reason of the peculiar terms of this contract, the assignee was not entitled to priority, and (2) that this assignee, the Yorktown Bank, did not file its assignment "within ten days after the date of such assignment," and so, under section 16 of the Lien Law, the assignment, as to them, was invalid.

In substantiation of their first point the lienors cite that clause of the contract which is to the effect that "the last payment on this contract shall not be made * * * until the party of the second part has furnished satisfactory evidence that there are no outstanding liens or claims for materials furnished or labor performed on the said work." From this, they deduce the conclusion that, since in this instance no such proof was ever furnished, the contractor could have no recovery, and, therefore, the assignee could not. This is the same argument, already considered, which again must fail, since it proves too much. If, for lack of proof that no liens existed, the assignee must fail, then, likewise, must the claims of lienors, who are in effect mere assignees, in which case the State would be relieved from all further payments upon a conceded debt. Moreover, it is well established that such a provision inures only to the benefit of the State and is not available to lienors. (*Fortunato* v. *Patten*, 147 N. Y. 277; *Hackett* v. *Campbell, supra; Riverside Contracting Co.* v. *City of New York, supra.*)

To establish their second point, that the assignment to the Yorktown Bank was not filed in the appropriate offices " within ten days after the date of such assignment," and was, therefore, invalid, the lienors assert that the assignment executed on May 16, which was duly filed on May 17, 1929, in truth was an ineffective instrument, since several similar assignments previously made, which

had not been filed in the various offices as the statute requires, had conveyed to the Yorktown Bank all the rights of the contractor-assignor. We do not think the argument deserves serious consideration. After all, an instrument of conveyance, such as an assignment, is merely the written evidence of a transfer previously agreed upon orally, and there is no reason why successive instruments may not be employed as such evidence. As well might it be claimed that a deed, given to take the place of a lost and unrecorded deed, conveyed nothing and could not be recorded, as to claim that this instrument of assignment was void because it transferred nothing. The language of the statute relates not to the original assignment, oral or written, which may have been given, but to the particular instrument offered for filing, when it is said that the instrument must be filed " within ten days after the date of such assignment." This particular instrument of assignment was filed not only within ten days of the date given therein, but within such period after the actual execution of the instrument.

The judgments should be modified in accordance with this opinion, and, as so modified, affirmed, with costs in all courts to appellants payable out of the retained percentages. (See 260 N. Y. 698.)

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment accordingly.