SCARSDALE NATIONAL BANK AND TRUST COMPANY, Appellant, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Respondent.*

Second Department, October 6, 1933.

*Lawrence Berenson*, for the appellant.

*Henry E. Stohldreier* [*Walter W. Westall* with him on the brief], for the respondent.

* Modfg. 146 Misc. 819.

KAPPER, J. The Cook Contracting Company entered into a contract with the People of the State of New York, acting by and through the Westchester county park commission, for the grading and draining of a portion of the Bronx River parkway extension. Between May 21, 1931, and June 27, 1931, the plaintiff bank made loans to the said contracting company amounting to the sum of $19,050, and as security therefor the contracting company assigned to the bank the moneys due and to become due under said contract. On June 1, 1931, plaintiff received from the Comptroller of the State in part payment of said loans or advances the sum of $6,779.90. On July 10, 1931, the contractor ceased work and the Westchester county park commission, on July 14, 1931, declared the contractor in default. The assignment by the contractor to the plaintiff bank of moneys due and to become due as the work progressed was admittedly properly recorded with the Westchester county park commission and with the State Comptroller. This recording of the assignment was on April 13, 1931, and, therefore, preceded the default. It was, moreover, admitted that there was in the hands of the State Comptroller a balance of $10,746.29 due the contractor prior to the default but which had not been paid. There was also in the hands of the State Comptroller a sum slightly in excess of $3,000 of "retained percentages," representing fifteen per cent of the contractor's work prior to the default and held pursuant to the contract to insure completion.

Upon the contractor's default, the defendant, as surety on the contractor's completion bond, proceeded to complete the work, which it did at a loss of $55,000.

It is the defendant's claim that besides the retained percentages it became entitled to the said sum of $10,746.29 admittedly earned by the contractor prior to the default. It urges that it became subrogated to the rights which the State had against the contractor, and it argues that if the State had been compelled to complete the contract there could be no question that the State would have had the right to recoup its losses from moneys held by it on account of the contract as against the assignee.

The learned Special Term awarded defendant judgment for both amounts, (1) of retained percentages, and (2) the sum earned and due the contractor. We think that as to the retained percentages the adjudication is correct, as that sum was to be withheld to insure completion; but we are constrained to differ with the learned court regarding the ownership of the moneys actually earned by the contractor prior to the default and then due and payable.

It was found as a matter of fact that the plaintiff had failed to prove that the moneys loaned were used in the prosecution of the

work under the contract. We think this finding of fact must be reversed, as the only evidence establishes the contrary.

In *Lacy* v. *Maryland Casualty Co.* (32 F. [2d] 48) it was held that the surety upon a completion bond had a superior equity to moneys due and unpaid as against an assignee thereof where the surety upon his principal's default completes his principal's contract at a loss, and that an assignment of moneys due is to be ignored and that the unpaid sums were to be applied on the contract, the surety in such a case being subrogated to the rights of the obligee of the bond. Such a ruling has not been made by the courts of our State in so far as I am apprised; and the correctness of the Federal court ruling seems to have been doubted in *Arrow Iron Works, Inc.,* v. *Greene* (260 N. Y. 330).

Subrogation, as has so often been said, is a creature of equity, and is applicable only when and to the extent that it will enable a party to recoup losses as against those whose equities do not measure up to his. In controlling and directing this broad power, equity must, in turn, be guided by the spirit and purpose of the Lien Law of this State, the prime motive of which is to preserve and protect the status of men whose labor and materials have been utilized to make the given project possible, even when a liberal construction of that law is necessary to attain that end. (*Giant Portland Cement Co.* v. *State of New York*, 232 N. Y. 395, 403.) Equally entitled to the benefits and protection of the Lien Law is the party who furnishes the money to enable accomplishment of the enterprise, and whose debt is acknowledged by the contractor in the form of an assignment, *pro tanto*, of the sums due under the contract. Section 16 of the Lien Law provides for the filing of such assignment so as to give notice to all respecting the rights of the assignee, and, as before stated, the assignment to the bank by the contractor was duly and properly filed and recorded.

In *Arrow Iron Works, Inc.,* v. *Greene* (260 N. Y. 330, 340) Judge KELLOGG, writing for an unanimous court, said (citing many cases): " The preponderance of authority, to the effect that an assignee of the moneys due or to become due under a contract for a public improvement, has priority over all lienors whose liens are subsequently filed, is overwhelming." This priority indicated in the *Arrow Iron Works* case has been incorporated into the Lien Law itself relating to contracts for public improvements. (Lien Law, § 25, subd. 1.)

In *Anderson* v. *Hayes Const. Co.* (243 N. Y. 140) it was held that our Lien Law protects an assignee of moneys due under a contract for a public improvement, and that the assignment takes precedence of liens subsequently filed. The legal effect of these

holdings establishes that title to the moneys has passed to the assignee where the moneys have been earned by the contractor and are presently payable.

The bank loaned its money to the contractor, which was applied by the contractor to the performance of the work. The loans were made on the strength of the payments to be made by the State. We are in accord with the bank's contention that the moneys being actually due and payable by the State prior to the default should not be awarded to the surety on the theory of subrogation, and that this right of subrogation should not be enlarged to the point where the surety could possess itself of moneys earned from the loans made by the bank to the contractor and with which the surety's duty of completion had no relation whatever. The State is not holding back these moneys by reason of any offset it possessed against them. They were moneys actually due and payable, and the title thereto was in the bank by virtue of the assignment.

In *American Radiator Co.* v. *City of New York* (223 N. Y. 193), where there was a contract for a public improvement, there were notices of liens filed on October 13 and 15, 1915, where an installment payment was certified to be due on October 5, 1915. The contract was declared forfeited on November 24, 1915, and was thereafter let for completion work to another contractor. As a result of this forfeiture, the trial court and the Appellate Division held that the liens did not attach, but the Court of Appeals held this to be error, holding that the liens attached to the amount due to the contractor at the time the notices of lien were filed, and that the liens were not affected by the subsequent forfeiture of the contract. Similar views seem to have been entertained in *Foshay* v. *Robinson* (137 N. Y. 134) and *Dealers' Lumber Corporation* v. *Wright* (212 App. Div. 429, 432).

The judgment should be modified by awarding to plaintiff the sum which was due and payable by the State to the contractor prior to the default, and as so modified affirmed, without costs.

Present — LAZANSKY, P. J., YOUNG, KAPPER, HAGARTY and SCUDDER, JJ.

Judgment modified by awarding to plaintiff the sum which was due and payable by the State to the contractor prior to the default, and as so modified unanimously affirmed, without costs. Inconsistent findings and conclusions of law are reversed and new findings and conclusions will be made in accordance with opinion.

Settle order on notice.