ALBERT G. STANTON and Another, Copartners Doing Business as A. G. STANTON & Co., and Others, Plaintiffs, v. BABOR-COMEAU & COMPANY, INC., THE PEOPLE OF THE STATE OF NEW YORK and Others, Defendants.

Supreme Court, Sullivan County, June 14, 1938.

*Meyer A. Novick*, for the plaintiffs and most of the defendants.

*John J. Bennett, Jr.*, Attorney-General [*Isaac I. Marks*, Assistant Attorney-General, of counsel], for the State of New York.

Other parties appeared by attorneys but filed no separate briefs.

*Kissam, Murray & Hayden* [*J. Francis Hayden* of counsel], appeared specially in opposition to the motion to bring in the National Surety Corporation as a party defendant.

HAROLD J. HINMAN, Official Referee. This is an action for the foreclosure of liens upon a public improvement by the State, involving construction work at Medium Security Prison at Woodbourne, N. Y. An order of reference to hear and determine the issues has been duly granted and entered, referring the same to Hon. Harold J. Hinman, as official referee. This order followed a

motion at Special Term, Mr. Justice FOSTER presiding, in which an application of plaintiffs to strike out the third paragraph of the answer of the State of New York and for summary judgment was denied. That paragraph set up a defense of cancellation of the contract, completion of the work pursuant to the terms of the surety bond, payment of the balance of the moneys available under the contract remaining in the State Comptroller's hands to the National Surety Corporation, which completed the work, and leaving no further moneys due or to grow due in connection with this contract for the payment of liens. Upon appeal to the Appellate Division by the plaintiffs, the order was affirmed (251 App. Div. 771), that court stating in its decision: " The order was proper. Decision on the merits should await consideration of all the facts after a trial of the issues; furthermore the surety is not a party to the action and might be directed to be brought in as a party in order to permit a full determination of all the rights involved."

At the opening of the trial before me, upon agreement of the parties, I granted a motion of the plaintiffs that the issues be separated, pursuant to section 443 of the Civil Practice Act, and that, as a preliminary issue, there should be tried the issue raised by paragraph third of the State's answer, relating to a cancellation of the contract by the State. At the same hearing the plaintiffs made a motion to bring in the National Surety Corporation, which was made returnable at the next hearing. The National Surety Corporation appeared specially by counsel at the next hearing for the purpose of opposing the motion, filed an affidavit in opposition thereto, in which reliance was placed largely upon undisputed documentary proofs which have been received in evidence upon the trial, and spread its oral argument in full upon the record. After the completion of the proofs offered on the preliminary issue of cancellation, decision was reserved, both upon that issue and the motion to bring in the National Surety Corporation as a party. Briefs upon these issues have been presented by the attorneys for the plaintiffs, by the Attorney-General, and by the attorneys for the National Surety Corporation, which have been carefully considered. The bringing in of the surety corporation as a party is dependent upon the soundness of the State's position as to cancellation and the payment to the surety corporation of the balance of all moneys available in connection with this contract.

The undisputed facts are as follows: On January 21, 1933, the State, through its Department of Correction, entered into a contract with the defendant Babor-Comeau & Company, Inc., for construction work at a prison at Woodbourne, N. Y., in accordance

with the terms set forth in said agreement, which expressly declared that "the Proposal, the General Conditions, the Drawings and Specifications, constitute a part of this contract, and are to have the same force and effect as if set forth specifically and at length herein."

It was provided in the "General Conditions," article 26, paragraphs 108 and 109, that on default by the contractor "the contract may be declared null and void, the security retained by or deposited with the State pursuant to the provisions of the State Finance Law may be forfeited and the materials built into the work shall become the property of the State. The State, through the Chief Engineer, may thereupon call upon the surety to complete the contract as provided for in the bond, or the State may, at its option, proceed to complete the work, either by day work or contract, and any funds retained by the State shall be applied to pay the increased cost of the work. If the contract is annulled under this article, the contractor shall not be entitled to any damages on account thereof, nor shall such annulment affect the right of the State to recover against the contractor or his surety damages which may arise, or extra costs which may be incurred by it as the result of the failure of the contractor to carry out the terms of the contract." Paragraph 110 of said article provided that, before declaring the contract null and void, the State, through the chief engineer, should serve upon the contractor and his surety a seven days' notice calling attention to the default and requiring them to show cause why the contract should not be declared null and void. Paragraph 111 of said article provided that the chief engineer should notify, in writing, both the contractor and the surety if he decides to cancel the contract following the expiration of the seven days' notice.

On January 31, 1933, and after Babor-Comeau & Company, Inc., had entered into said written contract, bearing the same date, the said contractor, as principal, and the National Surety Company, as surety, furnished a bond running to the State of New York for its security in the performance of said contract, which, amongst other things, provided as follows: "And the said surety, for value received, hereby stipulates and agrees, if requested to do so by the State *to fully perform and complete the work* mentioned and described in said contract and specifications, pursuant to the terms, conditions and covenants thereof, if for any cause, said principal fails or neglects to so fully perform and complete said work."

The original contract price was $790,651. Later, and before default, the amount was changed to $808,549.08. Later still it was changed to $803,350.45. Before default the contractor did

work for which it was paid $620,300. The retained percentages, retained by the State for security, amounted to $53,575.94 at the time of default. On December 12, 1934, after default, the chief engineer served the seven days' notice provided for in the contract, prior to declaring the contract null and void. On January 4, 1935, after granting an extension of time, the chief engineer served written notice upon the contractor stating that its contract was declared null and void. On the same date the chief engineer wrote to the National Surety Corporation stating: " In view of these facts, we declare the contract of Babor-Comeau & Co., Inc., null and void and call upon you, as surety, to proceed forthwith *to complete the work*, as set forth by the contract and the bond which you executed."

The surety bond of January 31, 1933, was executed by the National Surety *Company*, as surety. The completion of the work was done by the National Surety *Corporation*. It is apparent that there should be an explanation. The National Surety Company was placed in the hands of the Superintendent of Insurance for liquidation on April 29, 1933, and is now being liquidated. Under a contract between the Superintendent of Insurance, as liquidator, and the National Surety Corporation, a new corporation formed for the purpose of aiding the liquidator, a copy of which agreement is attached to the affidavit presented by the surety corporation on the motion before me, the new National Surety Corporation agreed to assume " liability for losses " under all bonds issued by the National Surety Company in favor of the People of the State of New York, including contract and other bonds, in force April 30, 1933. The fact and extent of this agreement was communicated to the State of New York by a certificate of the National Surety Corporation, which was accepted by the Comptroller and filed on June 9, 1933. This certificate is in evidence before me as plaintiffs' Exhibit 5. It certifies: " That National Surety Corporation, for good and valuable considerations, *has assumed liability for losses*, under all bonds and-or undertakings issued by the National Surety Company in favor of the People of the State of New York, including contract * * * and other bonds, * * *, which losses may occur after midnight April 30, 1933."

This was the situation which existed when the default took place and when the chief engineer served the notice and declared the contract null and void. By reason of the assumption certificate under which the new National Surety Corporation notified the State that it " assumed liability for losses " that corporation was served with the notice and with the letter of January 4, 1935,

notifying it that the contract had been declared null and void and calling upon it " to proceed forthwith to complete the work."

On February 26, 1935, according to defendant State's Exhibit E, the National Surety Corporation wrote to the chief engineer that it elected to complete the contract declared null and void and stated: " Our election to complete the contract is based upon our position as surety for Babor-Comeau & Co., Inc., and has been made with the intention and understanding that we are subrogated to all the rights of the State in and to all funds remaining unpaid to Babor-Comeau & Co., Inc., under its contract, to the extent of our cost of completing the work."

On February 27, 1935, the chief engineer wrote to National Surety Corporation (defendant State's Exhibit F) acknowledging receipt of defendant State's exhibit as follows: " Receipt is acknowledged of your letter of February 26 stating that you will complete the contract of Babor-Comeau & Co., Inc., new buildings at Woodbourne Prison, which was cancelled January 4 and turned over to you for completion in accordance with the terms of the bond which you furnished. * * * Your understanding of the funds available for the completion of this work agrees with ours."

The National Surety Corporation, through a contractor acceptable to the State, completed the work at a cost certified to the Comptroller of $195,216.74, which was in excess of the balance of the moneys in the hands of the State available for this contract. After default there were additions and deductions which left a balance due under the contract of $183,050.45, all of which was paid to the National Surety Corporation upon estimates. The excess cost to the surety corporation was $12,166.29. If the State was authorized in the circumstances to pay to the surety corporation all of the $183,050.45, which included $53,575.94 of retained percentages at the time of default, there is no fund available for the payment of liens aggregating about $139,000, which are open and unsatisfied against moneys due or to become due to Babor-Comeau & Company, Inc., because there were no moneys which ever became due to that contractor after default.

Thus the question to be settled is whether there was a cancellation of the Babor-Comeau & Company, Inc., contract. If so, no further payments could fall due to Babor-Comeau & Company, Inc., and all the lienors can recover is the amount due from the State to the contractor. (Lien Law, §§ 5, 60.) The plaintiffs concede that if the State had relet a contract for completion of the canceled contract or did the work itself, none of the unpaid moneys would ever become due to the original contractor, and the lienors could not succeed; but the gist of their argument here is that, on

the authority of *Wilson* v. *Moon* (240 App. Div. 440; affd., 265 N. Y. 640), the surety, in completing the contract, stepped into the shoes of the original contractor, and the liens attached in the same manner as if the original contractor had completed.

In developing its claim to the application of the decision in *Wilson* v. *Moon* (*supra*), the plaintiffs contend that the bond not only accompanied the contract but formed a part thereof; that they were in reality one indivisible and inseparable document; that the surety was a primary obligor under the contract because the contract and bond were executed simultaneously and concurrently; that the doctrine of subrogation is not allowed in favor of one who pays a debt in performance of his own covenants and that the surety in this case completed the contract in performance of its own covenants; that the bond guaranteed the performance and completion of the contract by Babor-Comeau & Company, Inc., free and clear of all claims or incumbrances; that the National Surety Corporation duly succeeded to all the obligations of the National Surety Company; that there was no legal cancellation of the contract so far as the lienors are concerned; that the surety was bound to complete the contract as part of a primary obligation assumed in its bond which formed a part of the contract; and that the surety stepped in and completed the very same contract under its obligation to do so thereunder, and thus it stepped into the shoes of the original contractor and occupied the same situation as if the original contractor had completed.

That the bond did not form a part of the contract and that the contract and bond did not form one document so as to make the surety a party to the contract and a primary obligor to perform its own covenants thereunder, but was a separate instrument of suretyship, with independent covenants as such, is shown by the recitals in the bond and particularly the recital: " Whereas, said Principal has entered into a certain written contract bearing date January 31, 1933." The bond was signed after the contract was executed and only for the protection of the State. Moreover, the contract itself recites as follows: " It is understood and agreed that all the terms, provisions, conditions and obligations set forth in this Agreement, the Proposal, the General Conditions, the Drawings and Specifications, constitute a part of this contract, and are to have the same force and effect as if set forth specifically and at length herein." Nowhere is the bond mentioned as constituting a part of the contract, and the contract was executed only by the proper State authority and the contractor. The theory of the plaintiffs that the surety was a primary obligor under the contract is clearly unsound.

It is difficult to understand the theory of the plaintiffs' contention that the bond guaranteed the performance and completion of the contract by Babor-Comeau & Company, Inc., "*free and clear of all claims and incumbrances.*" If it is intended to mean that the contractor covenanted to complete the contract free from all claims for labor and materials and that the surety was bound to do the same thing in completing the work pursuant to the terms of the contract or the bond, there is nothing in the contract or the bond to so indicate. There is no covenant by the contractor to complete the contract free from such claims. There is only a covenant by the State that the "last payment on this contract shall not be made" until the contractor "has furnished satisfactory evidence that there are no outstanding liens or claims for materials furnished or labor performed on the said work."

Since the plaintiffs rely upon the decision in *Wilson* v. *Moon* (*supra*), it is important to note the provisions of the original contract, bond, notice upon default and subsequent completion contract between the board of education and the surety as found in the record on appeal in that case relating to payment of such claims. The original contract therein contained the following provisions: "The contractor agrees to deliver and complete the said buildings, and each thereof, free from all mechanics' liens or claims for labor done or materials furnished herein, as well as upon or against the fund provided for the construction of said buildings * * * and to have all of such liens and claims discharged from records, and all actions and proceedings, if any, dismissed, before being entitled to full payment." "The terms and conditions, of the bond, to be executed by the contractor to the Board for the proper performance of all portions of this contract, shall be held to extend to all matters contained in this contract." "It is further mutually understood and agreed * * * that any and all such liens * * * shall be deemed included in and covered by the terms of the bond to be given to the Board by the contractor." "The contractor further covenants and agrees that * * * he will furnish a surety company bond * * * conditioned, among other things, for and bind the contractor to the faithful performance of this contract in strict accordance with the terms thereof, * * * and also pay all claims for material and labor."

In the *Wilson* v. *Moon* case the bond made the condition of the obligation include "Shall well and truly pay for all material used and services rendered in the execution and completion of said contract * * * and will pay for all claims for material and labor." Provisions of similar import as to agreement to pay laborers and materialmen are found in the notice upon default and the new

agreement of the surety to complete the contract which was consented to by the contractor. Certainly the provisions of the contract and bond in the present case are not comparable to those in the *Wilson* v. *Moon* case and clearly distinguish the two cases.

Thus reaching the final contention of the plaintiffs, that there was no cancellation of the contract of Babor-Comeau & Company, Inc., so far as the lienors are concerned and that the surety stepped into the shoes of the contractor and occupied the same situation as if the contractor had completed, as held in the *Wilson* v. *Moon* case, we must again refer to the record in that case to see what the problem was that was there presented to the court. In the first place, the original contract therein provided that in case of default by the contractor, " the Board shall also be at liberty to terminate the employment of the contractor for the said work." There was no provision for termination or cancellation of the contract, and the Appellate Division stated in its opinion (at p. 442) that from an examination of the original contract, the notice served upon the contractor and the surety and the later agreement with the surety, it was convinced that the original contract was not terminated. In the notice served upon the contractor and surety, the board of education expressly stated that it did not intend to " annul " the said contract. And in the new agreement, consented to by the contractor, there was a recital that in the notice it had directed the contractor and the surety to complete the contract.

In the present case we have a totally different situation. The contract here expressly provided, not for the termination of the employment of the contractor and an agreed completion by the surety, but an express cancellation of the contract in accordance with its terms and a completion of the work prescribed by the contract pursuant to its terms in accordance with the express provisions of the bond. That must have been the reason for insertion in the bond of the provision that the surety agreed " to complete the work mentioned and described in said contract " if requested to do so by the State. That was an independent covenant in the bond for the benefit of the State in the event of the cancellation of the contract. In such a case the surety would be carrying out its own covenant with the State predicated upon a previous cancellation and could not be deemed to have stepped into the shoes of the contractor whose right and the rights of all claiming under him had been defeated by cancellation of his contract.

Moreover, we find that in the *Wilson* v. *Moon* case the Appellate Division disclosed in its opinion that the board of education had a standing to maintain a suit in equity for the enforcement of the covenant of the contractor and surety that payment shall be made

to materialmen and laborers, on the authority of *Johnson Service Co.* v. *Monin, Inc.* (253 N. Y. 417). The Appellate Division thus held that, under the original contract, the bond and the later contract with the surety in the *Wilson* v. *Moon* case, the appellant surety " directly assumes an obligation to pay lienable claims of laborers and materialmen." No such situation exists in the present case, for lack of such a covenant upon which the State could have asserted a cause of action as trustee of an express trust for the benefit of lienors.

If anything further were needed to distinguish the present case from *Wilson* v. *Moon* it might be found in the fact that the National Surety Company, surety on the bond, later went into liquidation and still is, and that the National Surety Corporation, which completed the work, was organized to aid the Superintendent of Insurance in the liquidation, and assumed a limited liability for that purpose. Under its agreement with the Superintendent of Insurance and its assumption certificate filed with the Comptroller, it " assumed liability for losses " under all bonds issued by the National Surety Company in favor of the State. And in electing to complete the work pursuant to this contract it expressly stipulated with the chief engineer that it did so on the understanding " that we are subrogated to all of the rights of the State in and to all funds remaining unpaid to Babor-Comeau & Company, Inc., under its contract, to the extent of our cost of completing the work." This understanding was confirmed by the chief engineer. It was created to protect the State from losses, and its election to comply with the request of the State to complete the. work upon such a stipulation for subrogation to the State's rights to all remaining funds ought not to change its equitable status in relation to liens against moneys due or to become due to the contractor.

The Court of Appeals affirmed, without opinion, the decision of the Appellate Division in the *Wilson* v. *Moon* case (265 N. Y. 640). From our analysis of that case it is apparent that the Court of Appeals did not intend thereby to overrule its previous opinions in *Arrow Iron Works, Inc.,* v. *Greene* (260 N. Y. 330) and *Scarsdale Nat. Bank & Tr. Co.* v. *United States F. & G. Co.* (264 id. 159). In the latter case the Court of Appeals clearly held that the completing surety was fully subrogated to all of the rights of the State as against the contractor. Under that decision it was held that moneys earned and unpaid at the time the contractor abandoned his work and retained percentages were properly directed to be paid to the surety, which completed the work at a loss. It is true

that in the *Scarsdale* case the Court of Appeals was considering the rights of the surety as against the claims of an assignee of the contractor, but, as the court said, the assignment carried with it all of the rights of the contractor but nothing more; that both the contractor and assignee were bound by the terms of the contract; that the right of the assignee to all moneys due the contractor at the time of default was subject to the superior rights of the State to apply them to the cost of completion; that to all the rights of the State under the contract the surety became subrogated upon its execution of the bond, and they became available when it completed the work at a loss; and that its equitable lien, having arisen at the time of the execution of the bond, was superior to the assignment made thereafter.  The contention of the assignee was that the money of the assignee went into the work, thus reducing the cost of completion, and that it was, therefore, entitled to moneys earned prior to default.  The lienors in the present case are in no different position.  They are dependent upon the rights of the contractor and nothing more.  They are bound by the terms of the contract which provided for a cancellation of the contract and a forfeiture of the security retained by the State.  Even though the labor and materials supplied by the lienors went into the work and reduced the cost of completion, their rights were subject to the superior rights of the State to apply retained funds to the cost of completion and the surety was subrogated to the rights of the State.  I find nothing in the contract or the bond which justifies me to hold otherwise in this case.

Having reached the conclusion that there was a cancellation of the contract pursuant to its terms and that the retained moneys were properly paid to the surety corporation by the State, I conclude that the motion to bring in the surety corporation as a party should be denied.  Moreover, since there is no fund available for distribution to the lienors, there is no occasion for the taking of proofs as to the validity, subsistence and amounts of the liens, and the complaint and the pleadings of all the defendant lienors should be dismissed.  A motion by the State to that effect will be granted and decision and judgment entered accordingly.